**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| LOUIE GOHMERT, TYLER BOWYER, NANCY COTTLE, JAKE HOFFMAN, ANTHONY KERN, JAMES R. LAMON, SAM MOORHEAD, ROBERT MONTGOMERY, LORAINE PELLEGRINO, GREG SAFSTEN, KELLI WARD and MICHAEL WARD, | Civil Action No. 6:20-cv-00660-JDK |
| Plaintiffs, | |
| v. | **(Election Matter)** |
| THE HONORABLE MICHAEL R. PENCE, VICE PRESIDENT OF THE UNITED STATES, in his official capacity, | |
| Defendant. | |

**PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED**
**DECLARATORY JUDGMENT AND EMERGENCY INJUNCTIVE RELIEF**

COME NOW Plaintiffs, U.S. Rep. Louie Gohmert (TX-1), Tyler Bowyer, Nancy Cottle, Jake Hoffman, Anthony Kern, James R. Lamon, Sam Moorhead, Robert Montgomery, Loraine Pellegrino, Greg Safsten, Kelli Ward, and Michael Ward, by and through their undersigned counsel, and file this Motion for Expedited Declaratory Judgment and Emergency Injunctive Relief ("Motion"), and Memorandum of Law In Support Thereof, pursuant to Rules 57 and 65 of the FEDERAL RULES OF CIVIL PROCEDURE to request the following relief.

As explained in the Complaint, Plaintiffs seek an expedited declaratory judgment declaring that Sections 5 and 15 of the Electoral Count Act of 1887, PUB. L. NO. 49–90, 24 Stat. 373 (codified at 3 U.S.C. §§ 5, 15), are unconstitutional because these provisions violate the Electors Clause and the Twelfth Amendment of the U.S. Constitution.  U.S. CONST. art. II, § 1, cl. 1 & amend. XII. The Complaint and this Motion address a matter of urgent national concern that involves only issues of law—namely, a determination that Sections 5 and 15 of the Electoral Count Act violate

the Electors Clause and the Twelfth Amendment of the U.S. Constitution—where the relevant facts concerning the Plaintiffs' standing, the justiciability of Plaintiffs' claims by this Court, and this Court's ability to grant the relief requested are not in dispute.

Further, the purpose of this Complaint is a declaratory judgment regarding the rights and legal relations of Plaintiffs and of Defendant, namely, that Vice President Michael R. Pence, acting in his capacity as President of the Senate and Presiding Officer for the ***January 6, 2021 Joint Session of Congress*** to count Arizona and other States' electoral votes for choosing President, is free to exercise his exclusive authority and sole discretion under the Twelfth Amendment to determine which slate of electoral votes to count, or neither, and must disregard any provisions of the Electoral Count Act that conflict with the Twelfth Amendment, U.S. CONST. amend. XII.

Because the requested declaratory judgment will terminate the controversy arising from the conflict between the Twelfth Amendment and the Electoral Count Act, and the facts are not in dispute, it is appropriate for this Court to grant this relief in a summary proceeding without an evidentiary hearing or discovery. *See* FED. R. CIV. P. 57, Advisory Committee Notes. Accordingly, Plaintiffs request an expedited summary proceeding under Rule 57 of the Federal Rules of Civil Procedure to grant the relief requested herein no later than ***Thursday, December 31, 2020***, and for emergency injunctive relief under FED. R. CIV. P. 65 consistent with the declaratory judgment requested herein on that same date. Plaintiffs style their motion as an emergency motion under Local Civil Rule 7(l) because there is not enough time before December 31 to move for an expedited briefing schedule under Local Civil Rule 7(e).

Plaintiffs adopt all allegations contained in their Complaint.

Plaintiffs respectfully request an opportunity for oral argument.  A proposed Order is attached.

## TABLE OF CONTENTS

Table of Contents ......................................................................................................... iii

Table of Authorities ...................................................................................................... iv

Introduction ....................................................................................................................1

Facts ...............................................................................................................................1

Argument ........................................................................................................................3

I.     This court has jurisdiction for Plaintiffs' claims...................................................3

     A.     Plaintiffs have standing...........................................................................3

          1.     Plaintiffs have suffered an injury in fact.....................................4

          2.     The Defendant has caused Plaintiffs' injuries. ............................7

          3.     This Court can redress Plaintiffs' injuries. .................................9

          4.     Plaintiffs' procedural injuries lower the constitutional bar
                for immediacy and redressability.................................................11

     B.     The Speech or Debate Clause does not insulate the Vice President. ....................12

     C.     Sovereign immunity does not bar this action........................................................13

     D.     The political-question doctrine does not bar this suit. .........................................15

     E.     This case presents a federal question, and abstention principles do
          not apply...............................................................................................................15

     F.     Plaintiffs are entitled to an expedited declaratory judgment. ..............................16

II.     Plaintiffs are entitled to an emergency injunctive relief. .........................................17

     A.     Plaintiffs have a substantial likelihood of success. ..............................................17

          1.     Unconstitutional laws are nullities............................................18

          2.     The Electoral Count Act violates the Electors Clause and
                the Twelfth Amendment. ............................................................18

           3.     The Electoral Count Act violates the Constitution's
                structural protections of liberty..................................................22

     B.     Plaintiffs will suffer irreparable injury. ...............................................................23

     C.     Plaintiffs need not demonstrate irreparable harm for declaratory
          relief....................................................................................................................24

     D.     The balance of equities favors Plaintiffs...............................................................25

     E.     The public interest favors Plaintiffs......................................................................26

Conclusion ...................................................................................................................27

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003) ........................................................26

*Baker v. Carr*, 369 U.S. 186 (1962) ...............................................................6, 15,

*Bond v. United States*, 564 U.S. 211 (2011) ...........................................................11

*Brown v. Maryland*, 25 U.S. (12 Wheat.) 419 (1827) ...............................................18

*Bush v. Gore*, 531 U.S. 98 (2000) ...........................................................................15

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) ........................................................6

*Clinton v. New York*, 524 U.S. 417 (1998) .............................................................12

*Commissioner v. Shapiro*, 424 U.S. 614 (1976) ......................................................24

*Common Cause v. Biden*, 748 F.3d 1280 (D.C. Cir. 2014) ......................................12

*Cook v. Gralike*, 531 U.S. 510 (2001) ....................................................................16

*Ctr. for Biological Diversity v. United States EPA*, 937 F.3d 533 (5th Cir. 2019) ........................8

*Davis v. Passman*, 442 U.S. 228 (1979) ..................................................................14

*FEC v. Akins*, 524 U.S. 11 (1998) ..........................................................................10

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ......................................................9

*Harman v. Forssenius*, 380 U.S. 528 (1965) ...........................................................18

*Heckler v. Mathews,* 465 U.S. 728 (1984) ...............................................................10

*Hurley v. Reed,* 288 F.2d 844 (D.C. Cir. 1961) .......................................................24

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014) ....................25

*League of Women Voters of the United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ................26

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ...........................................4, 7, 11

*Marine Chance Shipping v. Sebastian*, 143 F.3d 216 (5th Cir. 1998) ..........................24

*McPherson v. Blacker*, 146 U.S. 1 (1892) ...............................................................15

*Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129 (5th Cir. 1986) ............................12

*Murphree v. Winter*, 589 F. Supp. 374 (S.D. Miss. 1984) ........................................23

*Nat'l Treasury Employees Union v. U.S.,* 101 F.3d 1423 (D.C. Cir. 1996) .................11

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012) ..........................................23

*Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221 (10th Cir. 2005) .......................26

*Powell v. McCormack*, 395 U.S. 486 (1969) ...............................10, 12-13, 17-18

*Reynolds v. Sims*, 377 U.S. 533 (1964) ...................................................................23

*Rowan Cos. v. Griffin*, 876 F.2d 26 (5th Cir. 1989) ...................................................................24

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.,*
   523 F.Supp.2d 376 (S.D.N.Y. 2007)...............................................................................24

*Sierra Club v. Glickman*, 156 F.3d 606 (5th Cir. 1998) ...........................................................8, 11

*Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976) ..........................................8

*Synthetic Organic Chem. Mfrs. Ass'n v. Sec'y, Dep't of Health & Human Servs.*, 720 F.Supp.
   1244 (W.D. La. 1989) ...........................................................................................................8

*Tel. & Data Sys. v. FCC*, 19 F.3d 42 (D.C. Cir. 1994)...................................................................8

*Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006) ......................................... 25-26

*Tierney v. Schweiker,* 718 F.2d 449 (D.C. Cir. 1983)...................................................................24

*Trump v. Wis. Elections Comm'n*, No. 20-cv-1785, 2020 U.S. Dist. LEXIS 233765
   (E.D. Wis. Dec. 12, 2020)......................................................................................................6

*United States v. Morrison*, 529 U.S. 598 (2000) ..........................................................................18

*United States v. Winstar Corp.*, 518 U.S. 839 (1996) ...................................................................22

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635 (2002)................................14

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994) ......................................................................26

*Webster v. Doe*, 486 U.S. 592 (1988) ..........................................................................................25

*Wesberry v. Sanders*, 376 U.S. 1 (1964)........................................................................................6

*Williams v. Brooks*, 945 F.2d 1322 (5th Cir. 1991) .....................................................................12

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)......................................17

*Wood v. Raffensperger*, No. 20-14418, 2020 WL 7094866 (11th Cir. Dec. 5, 2020) ...................6

## STATUTES

U.S. CONST. art. I, § 5, cl. 2 ........................................................................................................23

U.S. CONST. art I, § 6, cl. 1 ..................................................................................................... 12-13

U.S. CONST. art. I, § 7, cl. 3 .........................................................................................................22

U.S. CONST. art. II, § 1, cl. 1.................................................................... 1, 6, 17-18, 21, 23, 26

U.S. CONST. art. III ......................................................................................................3, 6-8, 10-11, 15

U.S. CONST. art. III, § 2 ...............................................................................................................15

U.S. CONST. amend. XII ..................................................................................................... *passim*

3 U.S.C. § 5.................................................................................................1-5, 14, 18-19, 21-22, 26

3 U.S.C. § 6 ..................................................................................................................................21

3 U.S.C. § 15.........................................................................1, 4-5, 10-12, 14, 16, 19-21, 26

28 U.S.C. § 1331 ............................................................................................................................3

28 U.S.C. §2201 ................................................................................................24

Electoral Count Act of 1887, PUB. L. NO. 49–90, 24 Stat. 373 ............................................ *passim*

ARIZ. REV. STAT. § 16-212 ..............................................................................................6

## RULES

FED. R. CIV. P. 57 ....................................................................................16, 24

FED. R. CIV. P. 57 Advisory Committee Notes ..........................................................16

## LEGISLATIVE HISTORY

2 M. Farrand, RECORDS OF THE FEDERAL CONVENTION OF 1787 (1911).......................................9

## OTHER AUTHORITIES

10 Fed. Proc., L. Ed. §23:4 ........................................................................................24

A.B.A. Section of Admin. Law & Regulatory Practice, *A Blackletter Statement of Federal Administrative Law*, 54 ADMIN. L. REV. 1 (2002) ................................................13

Louis L. Jaffee, *The Right to Judicial Review I*, 71 HARV. L. REV. 401 (1958)...........................13

Chris Land & David Schultz, *On the Unenforceability of the Electoral Count Act*, 13 Rutgers J.L. & Pub. Policy 340 (2016) ..........................................................................23

J. Story, 1 COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 627 (3d ed. 1858) ..............................................................................................16

Laurence H. Tribe, *Erog v. Hsub and Its Disguises: Freeing* Bush v. Gore *from Its Hall of Mirrors*, 115 HARV. L. REV. 170 (2001)..........................................................................22

## INTRODUCTION

Plaintiffs, U.S. Representative Louie Gohmert (TX-1) ("Rep. Gohmert"), Tyler Bowyer, Nancy Cottle, Jake Hoffman, Anthony Kern, James R. Lamon, Sam Moorhead, Robert Montgomery, Loraine Pellegrino, Greg Safsten, Kelli Ward  and Michael Ward seek an expedited declaratory judgment declaring that Sections 5 and 15 of the Electoral Count Act of 1887, PUB. L. NO. 49–90, 24 Stat. 373 (codified in 3 U.S.C. §§ 5, 15), are unconstitutional because these provisions violate the Electors Clause and the Twelfth Amendment of the U.S. Constitution.  U.S. CONST. art. II, § 1, cl. 1 & Amend. XII.

## FACTS

The facts relevant to this motion are set forth in the Complaint and its accompanying exhibit are incorporated herein by reference.  Plaintiffs present here only a summary.

The Plaintiffs include Rep. Louie Gohmert—a Member of the U.S. House of Representatives, representing Texas's First Congressional District in both the current and the next Congress—who seeks to enjoin the operation of the Electoral Count Act to prevent a deprivation of his rights—and the rights of those he represents—under the Twelfth Amendment.  The Plaintiffs also include the entire slate of Republican Presidential Electors for the State of Arizona, as well as an outgoing and incoming member of the Arizona Legislature.  On December 14, 2020, pursuant to the requirements of applicable state laws, the Constitution, and the Electoral Count Act, the Plaintiff Arizona Electors, with the knowledge and permission of the Republican-majority Arizona Legislature, convened at the Arizona State Capitol, and cast Arizona's electoral votes for President Donald J. Trump and Vice President Michael R. Pence.  On the same date, the Republican Presidential Electors for the States of Georgia, Pennsylvania, and Wisconsin met at their respective State Capitols to cast their States' electoral votes for President Trump and Vice President Pence

(or in the case of Michigan, attempted to do so but were blocked by the Michigan State Police, and ultimately voted on the grounds of the State Capitol).

There are now competing slates of Republican and Democratic electors in five States with Republican majorities in both houses of their State Legislatures—Arizona, Georgia, Michigan, Pennsylvania, and Wisconsin (*i.e.*, the Contested States)—that collectively have 73 electoral votes, which are more than sufficient to determine the winner of the 2020 General Election.   On December 14, 2020, in Arizona and the other Contested States, the Democratic Party's slate of electors convened in the State Capitol to cast their electoral votes for former Vice President Joseph R. Biden and Senator Kamala Harris.   On the same day, Arizona Governor Doug Ducey and Secretary of State Katie Hobbs submitted the Certificate of Ascertainment with the Biden electoral votes to the National Archivist pursuant to the Electoral Count Act.

Republican Senators and Republican Members of the House of Representatives have also expressed their intent to oppose the certified slates of electors from the Contested States due to the substantial evidence of voter fraud in the 2020 General Election.   Multiple Senators and House Members have stated that they will object to the Biden electors at the January 6, 2021 Joint Session of Congress.   These public statements by legislators, combined with the fact that President Trump has not conceded and has given no indication that he will concede and political pressure from his nearly 75 million voters and other supporters, make it a near certainty that at least one Senator and one House Member will follow through on their commitments and invoke the (unconstitutional) Electoral Count Act's dispute resolution procedures.

Defendant Vice President Pence, in his capacity as President of the Senate and Presiding Officer at the January 6, 2021 Joint Session of Congress to select the next President, will be presented with the following circumstances: (1) competing slates of electors from the State of

Arizona and the other Contested States, (2) that represent sufficient electoral votes (a) if counted, to determine the winner of the 2020 General Election, or (b) if not counted, to deny either President Trump or former Vice President Biden sufficient votes to win outright; and (3) objections from at least one Senator and at least one Member of the House of Representatives to the counting of electoral votes from one or more of the Contested States and thereby invoking the unconstitutional procedures set forth in Section 15 of the Electoral Count Act.

As a result, Defendant Vice President Pence will necessarily have to decide whether to follow the unconstitutional provisions of the Electoral Count Act or the Twelfth Amendment to the U.S. Constitution at the January 6, 2021 Joint Session of Congress.  This approaching deadline establishes the urgency for this Court to issue a declaratory judgment that Sections 5 and 15 of the Electoral Count Act are unconstitutional and provide the undisputed factual basis for this Court to do so on an expedited basis, and to enjoin Defendant Vice President Pence from following any Electoral Count Act procedures in 3 U.S.C. §§ 5 and 15 because they are unconstitutional under the Twelfth Amendment.

## ARGUMENT

## I.   THIS COURT HAS JURISDICTION FOR PLAINTIFFS' CLAIMS.

Before entertaining the merits of this action, the Court first must establish its jurisdiction over the subject matter and the parties.  This action obviously raises a federal question, 28 U.S.C. § 1331, so Plaintiffs establish below that this action presents a case or controversy for purposes of Article III and their entitlement to seek relief in this Court via this action.

### A.   Plaintiffs have standing.

Article III standing presents the tripartite test of whether the party invoking a court's jurisdiction raises an "injury in fact" under Article III: (a) a legally cognizable injury (b) that is

both caused by the challenged action, and (c) redressable by a court.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-62 (1992).  The task of establishing standing varies, depending "considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Id* at 561.  If so, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 562.  If not, standing may depend on third-party action:

> When … a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed.  In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps on the response of others as well.

*Id.* (emphasis in original).  Here, Plaintiffs can assert both first-party and third-party injuries, with the showing for standing easier for the first-party injuries.  Specifically, Vice President Pence's action under the unconstitutional Electoral Count Act would have the effect of ratifying injuries inflicted—in the first instance—by third parties in Arizona.

### 1.    Plaintiffs have suffered an injury in fact.

Plaintiffs have standing as a member of the United States House of Representatives, Members of the Arizona Legislature, and as Presidential Electors for the State of Arizona.

Rep. Louie Gohmert is a Member of the U.S. House of Representatives, representing Texas's First Congressional District in both the current and the next Congress.  Rep. Louie Gohmert requests declaratory relief from this Court to prevent action as prescribed by 3 U.S.C. § 5, and 3 U.S.C. §15 and to give the power back to the states to vote for the President in accordance with the Twelfth Amendment.  Otherwise he will not be able to vote as a Congressional Representative in accordance with the Twelfth Amendment, and instead, his vote in the House, if there is disagreement, will be eliminated by the current statutory construct under the Electoral

Count Act, or diluted by votes of the Senate and ultimately by passing the final determination to the state Executives.

In the event that objections occur leading to a vote in the House of Representatives, then under the Twelfth Amendment, on January 6, in the new House of Representatives, there will be twenty-seven states led by Republican majorities, and twenty states led by Democrat majorities, and three states that are tied.  Twenty-six seats are required for a victor under the Twelfth Amendment, and further that, under the Twelfth Amendment, in the event neither candidate wins twenty-six seats by March 4, then the then-current Vice President would be declared the President. However, if the Electoral Count Act is followed, this one vote on a state-by-state basis in the House of Representatives for President simply would not occur and would deprive this Member of his constitutional right as a sitting member of a Republican delegation, where his vote matters.

The Twelfth Amendment specifically states that "if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President.  But in choosing the President, the votes shall be taken by states, the representation from each state having one vote."  The authority to vote with this authority is taken from the House of Representatives, of which Mr. Gohmert is a member, and usurped by statutory construct set forth in 3 U.S.C. § 5 and 3 U.S.C. §15.  Therein the authority is given back to the state's executive branch in the process of counting and in the event of disagreement – while also giving the Senate concurrent authority with the House to vote for President.  As a result, the application of 3 U.S.C. § 5 and 3 U.S.C. §15 would prevent Rep. Gohmert from exercising his constitutional duty to vote pursuant for President to the Twelfth Amendment.

Prior to December 14, 2020, Plaintiff Arizona Electors had standing under the Electors Clause as candidates for the office of Presidential Elector because, under Arizona law, a vote cast for the Republican Party's President and Vice President is cast for the Republican Presidential Electors.  *See* ARIZ. REV. STAT. § 16-212.  Accordingly, Plaintiff Arizona Electors, like other candidates for office, "have a cognizable interest in ensuring that the final vote tally reflects the legally valid votes cast," as "[a]n inaccurate vote tally is a concrete and particularized injury to candidates such as the Electors." *Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020) (affirming that Presidential Electors have Article III and prudential standing under Electors Clause); *see also Wood v. Raffensperger*, No. 20-14418, 2020 WL 7094866, *10 (11th Cir. Dec. 5, 2020) (affirming that if Plaintiff voter had been a candidate for office "he could assert a personal, distinct injury" required for standing); *Trump v. Wis. Elections Comm'n*, No. 20-cv-1785, 2020 U.S. Dist. LEXIS 233765 at *26 (E.D. Wis. Dec. 12, 2020) (President Trump, "as candidate for election, has a concrete particularized interest in the actual results of the election.").  Plaintiffs suffer a "debasement" of their votes, which "state[s] a justiciable cause of action on which relief could be granted" *Wesberry v. Sanders*, 376 U.S. 1, 5-6 (1964) (citing *Baker v. Carr*, 369 U.S. 186 (1962)).

The Twelfth Amendment provides as follows:

> *The electors shall meet in their respective states and vote by ballot for President and Vice President*, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they *shall make distinct lists of all persons voted for as President*, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate.

U.S. CONST. amend. XII (emphasis added).

### 2. <u>Plaintiffs' injuries are traceable to Defendant.</u>

Rep. Gohmert faces imminent threat of injury that the Defendant will follow the unlawful Electoral Count Act and, in so doing, eviscerate Rep. Gohmert's constitutional right and duty to vote for President under the Twelfth Amendment.  With injuries directly caused by a defendant, plaintiffs can show an injury in fact with "little question" of causation or redressability.  *Defenders of Wildlife,* 504 U.S. at 561-62.  Although the Defendant did not cause the underlying election fraud, the Defendant nonetheless will directly cause Rep. Gohmert's injury, which is causation— and redressability—under *Defenders of Wild*.

By contrast, the Arizona Electors suffer indirect injury *vis-à-vis* this Defendant.  But for the alleged wrongful conduct of Arizona executive branch officials under color of law, the Plaintiff Arizona Electors would have been certified as the presidential electors for Arizona, and Arizona's Governor and Secretary of State would have transmitted uncontested votes for Donald J. Trump and Michael R. Pence to the Electoral College.  The certification and transmission of a competing slate of Biden electors has resulted in a unique injury that only Plaintiff Arizona Electors could suffer, namely, having a competing slate of electors take their place and their votes in the Electoral College.  While the Vice President did not cause Plaintiffs' initial injury—that happened in Arizona—the Vice President stands in the position at the Joint Session on January 6 to ratify and purport to make lawful the unlawful injuries that Plaintiffs suffered in Arizona.  That is causation enough for Article III:

> According to the USDA, the injury suffered by Sierra Club is caused by the independent actions (*i.e.*, pumping decisions) of third party farmers, over whom the USDA has no coercive control.  Although we recognize that causation is not proven if the injury complained of is the result of the *independent* action of some third party not before the court, this does not mean that causation can be proven only if the governmental agency has coercive control over those third parties.  Rather, the relevant inquiry in this case is whether the USDA has the ability through various programs to affect the

> pumping decisions of those third party farmers to such an extent that
> the plaintiff's injury could be relieved.

*Sierra Club v. Glickman*, 156 F.3d 606, 614 (5th Cir. 1998) (interior quotation marks, citations, and alterations omitted, emphasis in original); *Tel. & Data Sys. v. FCC*, 19 F.3d 42, 47 (D.C. Cir. 1994); *Synthetic Organic Chem. Mfrs. Ass'n v. Sec'y, Dep't of Health & Human Servs.*, 720 F.Supp. 1244, 1248 n.2 (W.D. La. 1989) ("any traceable injury will provide a basis for standing, even where it occurs through the acts of a third party").

When third parties inflict injury—even private third parties—that injury is traceable to government action if the injurious conduct "would have been illegal without that [governmental] action." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 45 n.25 (1976). As explained below, Vice President Pence stands ready to ratify Plaintiffs' injuries via the unconstitutional Electoral Count Act, which is causation enough to enjoin his actions. Alternatively, "plaintiff's injury could be relieved" within the meaning of *Sierra Club v. Glickman* if the Vice President rejected the Electoral Count Act as unconstitutional.

A procedural-rights plaintiff must also show that "fixing the alleged procedural violation could cause the agency to 'change its position' on the substantive action," *Ctr. for Biological Diversity v. United States EPA*, 937 F.3d 533, 543 (5th Cir. 2019), which is easy enough here/ Under the Electoral Count Act, the "Blue" or "Biden" states have a bare House majority in the Congress that will vote on January 6. Under the Twelfth Amendment, however, the "Red" or "Trump" states have a 27-20-3 majority where each state delegation gets one vote in the House's election of the President. That distinction satisfies both third-party causation and procedural-rights tests for Article III standing.

The Twelfth Amendment gives Defendant exclusive authority and sole discretion as to which set of electors to count, or not to count any set of electors. If no candidate receives a majority

of electoral votes, then the President is to be chosen by the House, where "the votes shall be taken by States, the representation from each state having one vote."  U.S. CONST. amend. XII.  If Defendant Pence instead follows the procedures in Section 15 of the Electoral Count Act, Plaintiffs' electoral votes will not be counted because (a) the Democratic majority House of Representatives will not "decide" to count the electoral votes of Plaintiff Republican electors; and (b) either the Senate will concur with the House not to count their votes, or the Senate will not concur, in which case, the electoral votes cast by Biden's electors shall be counted because the Biden slate of electors was certified by Arizona's executive.  Under the Constitution, by contrast, the Vice President counts the votes and—if the count is indeterminate—the vote proceeds immediately to the House for President and to the Senate for Vice President. *See* U.S. CONST. amend. XII.[1]

### 3.     This Court can redress Plaintiffs' injuries.

Even if this Court would lack jurisdiction to *enjoin* the Vice President, *but see* Sections I.B-I.C, *infra* (immunity does not bar this action), this Court's authoritative declaration would provide redress enough.   *See Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) ("we may assume it is substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the census statute and constitutional provision by the District Court, even though they would not be directly bound by such a determination").  The

---

[1]  This intent that the Vice President count the votes is borne out by a unanimous resolution attached to the final Constitution that described the procedures for electing the first President (*i.e.*, for the one time when there would not already be a sitting Vice President), stating in relevant part "that the Senators should appoint a President of the Senate, for the sole Purpose of receiving, opening and counting the Votes for President." 2 M. Farrand, RECORDS OF THE FEDERAL CONVENTION OF 1787, at 666 (1911).  For all subsequent elections, when there would be a Vice President to act as President of the Senate, the Constitution vests the opening and counting in the Vice President.

Electoral Count Act is blatantly unconstitutional in many respects, *see* Section I.A, *infra*, and  "it is the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government, and even those of the legislature in the enactment of laws, have been exercised in conformity to the Constitution."  *Powell v. McCormack*, 395 U.S. 486, 506 (1969) (interior quotations omitted).

Even if Plaintiffs do not ultimately prevail under the process that the Twelfth Amendment requires, the relief requested would nonetheless redress their injuries from the unconstitutional Electoral Count Act process in two respects . First, with respect to seeking to follow the Twelfth Amendment procedure over that of 3 U.S.C. § 15, it would redress Rep. Gohmert's procedural injuries enough to proceed under the correct procedure, even if they do not prevail substantively. *FEC v. Akins*, 524 U.S. 11, 25 (1998).  Second, with respect to the Arizona Electors, it would redress their unequal-footing injuries to treat all rival elector slates the same, even if the House and not the electors choose the next President.  *Heckler v. Mathews,* 465 U.S. 728, 739-40 (1984) ("when the right invoked is that to equal treatment, the appropriate remedy is a *mandate* of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class") (citations and footnotes omitted, emphasis in original). In each respect, Article III does not require that Plaintiffs show that they will prevail in order to show redressability.

The declaratory relief that Plaintiffs request would redress their injuries enough for Article III and in the chart as set forth:

| Event/Issue | 3 U.S.C. § 15 | Twelfth Amendment |
|---|---|---|
| One Congress purports to bind future Congresses | Yes | No |
| Rival slates of electors | Bicameral dispute resolution with no presentment; state executive breaks ties | Vice President counts; House and Senate respectively elect President and Vice President if inconclusive |
| Violates Presentment Clause | Yes | No |
| Role for state governors | Yes | No |
| House voters | Each member votes (*e.g.*, CA gets 53 votes, ND gets 1) | Each state delegation votes (*e.g.*, CA and ND get 1 vote) |

As is plain from these material—and, here, dispositive—differences between the Twelfth Amendment and 3 U.S.C. § 15, the two provisions cannot be reconciled.

### 4.    Plaintiffs' procedural injuries lower the constitutional bar for immediacy and redressability.

Given that Plaintiffs suffer a concrete injury to their voting rights, Plaintiffs also can press their procedural injuries under the Electoral Count Act.  For procedural injuries, Article III's redressability and immediacy requirements apply to the *procedural violation* that will (or someday might) injure a concrete interest, rather than to the concrete future injury.  *Defenders of Wildlife,* 504 U.S. at 571-72 & n.7.  Specifically, the injuries that Plaintiffs assert affect the procedure by which the status of their votes will be considered, which lowers the thresholds for immediacy and redressability under this Circuit's and the Supreme Court's precedents.  *Id.*; *Glickman*, 156 F.3d at 613 ("in a procedural rights case, … the plaintiff is not held to the normal standards for [redressability] and immediacy"); *accord Nat'l Treasury Employees Union v. U.S.,* 101 F.3d 1423, 1428-29 (D.C. Cir. 1996).  Similarly, a plaintiff with concrete injury can invoke Constitution's structural protections of liberty.  *Bond v. United States*, 564 U.S. 211, 222-23 (2011).

Finally, voters from smaller states like Arizona suffer an equal-footing injury and a procedural injury *vis-à-vis* larger states like California because the Electoral Count Act purports

to replace the process provided in the Twelfth Amendment.  Under the Electoral Count Act, California has five times the votes that Arizona has, but under the Twelfth Amendment California and Arizona each have one vote.  *Compare* 3 U.S.C. § 15 *with* U.S. CONST. amend. XII.  That analysis applies in third-party injury cases.  *See Clinton v. New York*, 524 U.S. 417, 433 & n.22 (1998) (unequal-footing analysis applies to indirect-injury plaintiffs); *cf. id.* at 456-57 (that analysis should apply only to equal-protection cases) (Scalia, J., dissenting).  Nullification of a procedural protection and any related bargaining power is injury enough, even in third-party cases. *Clinton*, 524 U.S. at 433 & n.22.

## B.     The Speech or Debate Clause does not insulate the Vice President.

The Speech or Debate Clause provides that "Senators and Representatives" "shall not be questioned in any other Place" "for any Speech or Debate in either House":

> The Senators and Representatives … for any speech or debate in
> either House, … shall not be questioned in any other place.

U.S. CONST. art I, § 6, cl. 1.  "Not everything a Member of Congress may regularly do is a legislative act within the protection of the Speech or Debate Clause," *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 134-35 (5th Cir. 1986) (interior quotations omitted), because the "clause has been interpreted to protect only purely legislative activities," *Williams v. Brooks*, 945 F.2d 1322, 1326 (5th Cir. 1991) (internal quotation marks omitted), which renders it inapposite here. Where it applies, the Clause poses a jurisdictional bar not only to a court reaching the merits but also to putting the defendant to the burden of putting up a defense.  *Powell*, 395 U.S. at 502-03. But "Legislative immunity does not, of course, bar all judicial review of legislative acts," *Powell*, 395 U.S. at 503, and the Speech or Debate Clause does not even apply—by its terms—to the Vice President in his role as President of the Senate or to the Joint Session on January 6.

First, the Clause does not protect the Vice President acting in his role as President of the Senate. *See* U.S. CONST. art I, § 6, cl. 1; *cf. Common Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014) (declining to decide whether or not the Speech or Debate Clause protects the Vice President).  At best for the Vice President, the question is an open one, but Plaintiffs respectfully submit that the Constitution's plain language should govern:  The Clause does not apply to the Vice President.  Instead, as here, where an unprotected officer of the House or Senate implements an unconstitutional action of the House or Senate, the judiciary has the power to enjoin the officer, even if it would lack the power to enjoin the House, the Senate, or their Members.  *Powell*, 395 U.S. at 505.  In short, the Speech or Debate Clause does not protect Vice President Pence at all.

Second, even if the Speech or Debate Clause did protect the Vice President acting as President of the Senate for legislative activity in the Senate, the Joint Session on January 6 is no such action. *See* U.S. CONST. art I, § 6, cl. 1.  This is an election, and the Vice President has no more authority to disenfranchise voters via unconstitutional means as any other person.

### C.      Sovereign immunity does not bar this action.

The Defendant is Vice President Pence named as a defendant in his official capacity as the Vice President of the United States.  With respect to injunctive or declaratory relief, it is a historical fact that at the time that the states ratified the federal Constitution, the equitable, judge-made, common-law doctrine that allows use of the sovereign's courts in the name of the sovereign to order the sovereign's officers to account for their unlawful conduct (*i.e.*, the rule of law) was as least as firmly established and as much a part of the legal system as the judge-made, common-law doctrine of federal sovereign immunity.  Louis L. Jaffee, *The Right to Judicial Review I,* 71 HARV. L. REV. 401, 433 (1958); A.B.A. Section of Admin. Law & Regulatory Practice, *A Blackletter Statement of Federal Administrative Law*, 54 ADMIN. L. REV. 1, 46 (2002) (it is blackletter law

that "suits against government officers seeking prospective equitable relief are not barred by the doctrine of sovereign immunity").

In determining whether the doctrine of *Ex parte Young* avoids immunity, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citations omitted).  That is enough to survive a motion to dismiss on jurisdictional grounds: "The inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim[.]" *Id.* at 638.  Sovereign immunity poses no bar to jurisdiction here.[2]

The prayer for injunctive relief—that the Vice President be restrained from enforcing 3 U.S.C. §5 and §15 in contravention of the Twelfth Amendment of the Constitution—to instead follow the Twelfth Amendment, clearly satisfies the "straightforward inquiry."  Plaintiffs request declaratory relief to prevent unconstitutional action under 3 U.S.C. § 5 and § 15 and to give the power back to the states to vote for the President in accordance with the Twelfth Amendment. Therefore, the Defendant should be enjoined from proceeding to certify or count dueling electoral votes under the unconstitutional dispute resolution procedures in 3 U.S.C. § 5 and § 15, and instead to follow the constitutional process as set forth in the Twelfth Amendment of the Constitution.

---

[2]   Indeed, the sovereign immunity afforded a Member of Congress is co-extensive with the protections afforded by the Speech or Debate Clause.  In all other respects, Members of Congress are bound by the law to the same extent as other persons.  *Davis v. Passman*, 442 U.S. 228, 246 (1979) ("although a suit against a Congressman for putatively unconstitutional actions taken in the course of his official conduct does raise special concerns counseling hesitation, we hold that these concerns are coextensive with the protections afforded by the Speech or Debate Clause").

**D.**     **The political-question doctrine does not bar this suit.**

The "political questions doctrine" can bar review of certain issues that the Constitution

delegates to one of the other branches, but that bar does not apply to constitutional claims related

to voting (other than claims brought under the Guaranty Clause of Article IV, §4):

> We hold that this challenge to an apportionment presents no
> nonjusticiable "political question."  The mere fact that the suit seeks
> protection of a political right does not mean it presents a political
> question.  Such an objection "is little more than a play upon words."

*Baker*, 369 U.S. at 209.  As in *Baker*, litigation over political rights is not the same as a political

question.

**E.**     **This case presents a federal question, and abstention principles do not apply.**

Article III, § 2, of the Federal Constitution provides that, "The judicial Power shall extend

to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and

Treaties made, or which shall be made, under their Authority[.]"  It is clear that the cause of action

is one which "arises under" the Federal Constitution.  *Baker*, 369 U.S. at 199.  In *Baker*, the

Plaintiffs alleged that, by means of a 1901 Tennessee statute that arbitrarily and capriciously

apportioned the seats in the General Assembly among the State's 95 counties and failed to

reapportion them subsequently notwithstanding substantial growth and redistribution of the State's

population, they suffered a "debasement of their votes" and were thereby denied the equal

protection of the laws guaranteed them by the Fourteenth Amendment.  They sought, *inter alia*, a

declaratory judgment that the 1901 statute is unconstitutional and an injunction restraining certain

state officers from conducting any further elections under it.   *Id*.  The *Baker* line of cases

recognizes that "that voters who allege facts showing disadvantage to themselves as individuals

have standing to sue.'

The federal and constitutional nature of these controversies deprives abstention doctrines of any relevance whatsoever.  First, state laws for the appointment of presidential electors are federalized by the operation of The Electoral Count Act of 1887. *McPherson v. Blacker*, 146 U.S. 1, 27 (1892); *Bush v. Gore*, 531 U.S. 98, 113 (2000) (Rehnquist, C.J., concurring) ("A significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question.").  Second, "[i]t is no original prerogative of State power to appoint a representative, a senator, or President for the Union." J. Story, 1 COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 627 (3d ed. 1858).  Logically, "any state authority to regulate election to [federal] offices could not precede their very creation by the Constitution," meaning that any "such power had to be delegated to, rather than reserved by, the States." *Cook v. Gralike*, 531 U.S. 510, 522 (2001) (internal quotations omitted).

A more quintessentially federal question than which slate of electors will be counted under the 12th Amendment and 3 U.S.C. § 15 to elect the President and Vice President can scarcely be imagined.

**F.**       **Plaintiffs are entitled to an expedited declaratory judgment.**

Under Rule 57, an expedited declaratory judgment is appropriate where, as here, it would "terminate the controversy" based on undisputed or relatively undisputed facts.  *See* FED. R. CIV. P. 57, Advisory Committee Notes.  The facts relevant to this controversy are not in dispute, namely: (1) there are competing slates of electors for Arizona and the other Contested States that have been or will be submitted to the Electoral College; (2) the Contested States collectively have sufficient (contested) electoral votes to determine the winner of the 2020 General Election—President Trump or former Vice President Biden; (3) legislators in Arizona and other Contested States have contested the certification of their State's electoral votes by State executives, due to substantial evidence of voter fraud that is the subject of ongoing litigation and investigations; and

(4) Senators and Members of the House of Representatives have expressed their intent to challenge the electors and electoral votes certified by State executives in the Contested States.

As a result, Defendant Vice President Pence, in his capacity as President of the Senate and as the Presiding Officer for the January 6, 2021 Joint Session of Congress will be have to decide between (a) following the requirements of the Twelfth Amendment, and exercising his exclusive authority and sole discretion in deciding which slate of electors and electoral votes to count for Arizona, or neither, or (b) following the distinct and inconsistent procedures set forth in Section 15 of the Electoral Count Act.  The expedited declaratory judgment requested, namely, declaring that Section 5 and 15 of the Electoral Count Act are unconstitutional to the extent they conflict with the Twelfth Amendment and the Electors Clause, and that Defendant Pence may not follow these unconstitutional procedures, will terminate the controversy.  Further, as discussed below, the requested declaratory judgment would also establish that Plaintiffs meet all of the requirements for any additional injunctive relief required to effectuate the declaratory judgment by enjoining Defendant Pence from violating the Twelfth Amendment.

## II.  PLAINTIFFS ARE ENTITLED TO EMERGENCY INJUNCTIVE RELIEF.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 21 (2008).  If this Court grants the requested declaratory judgment, then all elements required for injunctive relief will have been met.

### A.  Plaintiffs have a substantial likelihood of success.

The first—and most important—*Winter* factor is the likelihood of movants' prevailing. *Winter,* 555 U.S. at 20.  Plaintiffs are likely to prevail because this Court has jurisdiction for this action, *see* Section I, *supra*, and because the Electoral Count Act is blatantly unconstitutional.

1.    <u>**Unconstitutional laws are nullities.**</u>

At the outset, if the Electoral Count Act violates the Constitution, the Electoral Count Act is a nullity:

> [I]t is the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government, and even those of the legislature in the enactment of laws, have been exercised in conformity to the Constitution; and if they have not, to treat their acts as *null and void*.

*Powell*, 395 U.S. at 506 (interior quotations omitted, emphasis added).  "Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000) (finding Congress exceeded its authority under the Commerce Clause in regulating an area of the law left to the States.  "Constitutional deprivations may not be justified by some remote administrative benefit to the State." *Harman v. Forssenius*, 380 U.S. 528, 542-43 (1965).  Put simply, "that which is not supreme must yield to that which is supreme." *Brown v. Maryland*, 25 U.S. (12 Wheat.) 419, 448 (1827).  Although *Brown* arose in a federal-versus-state context, the same simple truth applies in a constitution-versus-statute context: the supreme enactment controls the lesser enactment.

2.    <u>**The Electoral Count Act violates the Electors Clause and the Twelfth Amendment.**</u>

The requested expedited summary proceeding granting declaratory judgment will address the merits of Plaintiffs' claims, which raise only legal issues as to whether the provisions of Sections 5 and 15 of the Electoral Count Act addressing the counting of electoral votes from competing slates of electors for a given state are in conflict with the Twelfth Amendment and the Electors Clause and are therefore unconstitutional.  In other words, if the Court grants the requested relief, that holding and relief will be granted because the Court has found that these provisions of

the Electoral Count Act are unconstitutional and that Plaintiffs have in fact succeeded on the

merits.

Under 3 USC § 5, the Presidential electors of a state and their appointment by the State

shall be conclusive:

> If any State shall have provided, by laws enacted prior to the day
> fixed for the appointment of the electors, for its final determination
> of any controversy or contest concerning the appointment of all or
> any of the electors of such State, by judicial or other methods or
> procedures, and such determination shall have been made at least
> six days before the time fixed for the meeting of the electors, such
> determination made pursuant to such law so existing on said day,
> and made at least six days prior to said time of meeting of the
> electors, shall be conclusive, and shall govern in the counting of the
> electoral votes as provided in the Constitution, and as hereinafter
> regulated, so far as the ascertainment of the electors appointed by
> such State is concerned.

3 USCS § 5.

This statutory provision takes away the authority given to the Vice-President under the

Twelfth Amendment in determining which electoral votes are conclusive.  3 U.S.C. §15 in relevant

part states that both Houses, referencing the House of Representatives and the Senate, may

concurrently reject certified votes, and further that if there is a disagreement, then, in that case, the

votes of the electors who have been certified by the Executive of the State shall be determinative:

> …When all objections so made to any vote or paper from a State
> shall have been received and read, the Senate shall thereupon
> withdraw, and such objections shall be submitted to the Senate for
> its decision; and the Speaker of the House of Representatives shall,
> in like manner, submit such objections to the House of
> Representatives for its decision; and no electoral vote or votes from
> any State which shall have been regularly given by electors whose
> appointment has been lawfully certified to according to section 6 of
> this title [3 USCS § 6] from which but one return has been received
> shall be rejected, but the two Houses concurrently may reject the
> vote or votes when they agree that such vote or votes have not been
> so regularly given by electors whose appointment has been so
> certified. If more than one return or paper purporting to be a return
> from a State shall have been received by the President of the Senate,

those votes, and those only, shall be counted which shall have been regularly given by the electors who are shown by the determination mentioned in section 5 [3 USCS § 5] of this title to have been appointed, if the determination in said section provided for shall have been made, or by such successors or substitutes, in case of a vacancy in the board of electors so ascertained, as have been appointed to fill such vacancy in the mode provided by the laws of the State; but in case there shall arise the question which of two or more of such State authorities determining what electors have been appointed, as mentioned in section 5 of this title [3 USCS § 5], is the lawful tribunal of such State, the votes regularly given of those electors, and those only, of such State shall be counted whose title as electors the two Houses, acting separately, shall concurrently decide is supported by the decision of such State so authorized by its law; and in such case of more than one return or paper purporting to be a return from a State, if there shall have been no such determination of the question in the State aforesaid, then those votes, and those only, shall be counted which the two Houses shall concurrently decide were cast by lawful electors appointed in accordance with the laws of the State, unless the two Houses, acting separately, shall concurrently decide such votes not to be the lawful votes of the legally appointed electors of such State. But if the two Houses shall disagree in respect of the counting of such votes, then, and in that case, the votes of the electors whose appointment shall have been certified by the executive of the State, under the seal thereof, shall be counted. When the two Houses have voted, they shall immediately again meet, and the presiding officer shall then announce the decision of the questions submitted. No votes or papers from any other State shall be acted upon until the objections previously made to the votes or papers from any State shall have been finally disposed of.

3 U.S.C. § 15.

This expressly conflicts with the Twelfth Amendment which has already set what role the

House and the Senate play in addressing the votes of electors:

The electors shall meet in their respective states and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the

Senate;--The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;--the person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. *But in choosing the President, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice.* And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them, before the fourth day of March next following, then the Vice-President shall act as President, as in the case of the death or other constitutional disability of the President. The person having the greatest number of votes as Vice-President, shall be the Vice-President, if such number be a majority of the whole number of electors appointed, and if no person have a majority, then from the two highest numbers on the list, the Senate shall choose the Vice-President; a quorum for the purpose shall consist of two-thirds of the whole number of Senators, and a majority of the whole number shall be necessary to a choice. But no person constitutionally ineligible to the office of President shall be eligible to that of Vice-President of the United States.

U.S. CONST. amend. XII. (emphasis added).

The Constitution is unambiguously clear that: "The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted" "… and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives [who] shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote." Whereas 3 U.S.C. §15 and the incorporated referenced to 3 U.S.C. §5 delegate the authority to the

Executive of the State in the event of disagreement, in direct conflict with the Twelfth Amendment and directly taking the opportunity of Presidential Electors' competing slates from being counted.[3]

### 3.   The Electoral Count Act violates the Constitution's structural protections of liberty.

The Electoral Count Act exceeds the power of Congress to enact because "one legislature may not bind the legislative authority of its successors," *United States v. Winstar Corp.*, 518 U.S. 839, 872 (1996), which is a foundational and "centuries-old concept," *id.*, that traces to Blackstone's maxim that "Acts of parliament derogatory from the power of subsequent parliaments bind not." *Id.* (quoting 1 WILLIAM BLACKSTONE, COMMENTARIES *90). "There is no constitutionally prescribed method by which one Congress may require a future Congress to interpret or discharge a constitutional responsibility in any particular way." Laurence H. Tribe, *Erog v. Hsub and Its Disguises: Freeing* Bush v. Gore *from Its Hall of Mirrors*, 115 HARV. L. REV. 170, 267 n.388 (2001).  Thus, the Electoral Count Act is a nullity because it exceeded the power of Congress to enact.

The Electoral Count Act also violates the Presentment Clause by purporting to create a type of bicameral order, resolution, or vote that is not presented to the President:

> *Every Order, Resolution, or Vote*, to Which the Concurrence of the Senate and House of Representatives may be necessary (*except on a question of Adjournment*) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by

---

[3]  Similarly, 3 U.S.C. § 6 is inconsistent with the Electors Clause—which provides that electors "shall sign and certify, and transmit sealed to the seat of the government of the Unit-ed States" the results of their vote, U.S. Const. art. II, § 1, cl. 2-3—because § 6 relies on state executives to forward the results of the electors' vote to the Archivist for delivery to Congress. 3 U.S.C. § 6. Although the means of delivery are arguably inconsequential, the Constitution vests state executives with no role whatsoever in the process of electing a President.  A state executive lends no official imprimatur to a given slate of electors under the Constitution.

two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill.

U.S. CONST. art. I, § 7, cl. 3 (emphasis added).  The House and Senate cannot resolve the issues that the Electoral Count Act asks them to resolve without either a supermajority in both houses or presentment.

The Electoral Count Act similarly improperly restricts the authority of the House of Representatives and the Senate to control their internal discretion and procedures pursuant to Article I, Section 5 which provides that "[e]ach House may determine the Rules of its Proceedings …" U.S. CONST. art. I, § 5, cl. 2.  The Electoral Count Act also delegates tie-breaking authority to State executives (who have no agency under the Electors Clause or election amendments) when a State presents competing slates that Congress cannot resolve.  As such, the Electoral Count Act also violates the non-delegation doctrine, the separation-of-powers and anti-entrenchment doctrines.  *See generally* Chris Land & David Schultz, *On the Unenforceability of the Electoral Count Act*, 13 Rutgers J.L. & Pub. Policy 340, 364-377 (2016).

As indicated, Plaintiffs have standing to press these structural protections of liberty because Plaintiffs also suffer concrete injury through the debasement of their votes. *See* Section I.A.4, *supra*.

B.       Plaintiffs will suffer irreparable injury.

Plaintiffs' votes will be counted or not counted at the January 6 joint session.  The failure to count a lawful vote is an irreparable injury.  *See*, *e.g.*, *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote . . . constitutes irreparable injury.").  Indeed, the deprivation of any fundamental right constitutes irreparable injury, *Murphree v. Winter*, 589 F. Supp. 374, 381 (S.D. Miss. 1984) (citing *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976)), and voting rights are "a fundamental political right, because preservative of all

rights." *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964)  (internal quotations omitted).  Moreover, if the counting of votes proceeds under the Electoral Count Act, Plaintiffs' votes will be adjudicated via an unconstitutional procedure, which also qualifies as irreparable harm: there will be no opportunity to revisit the issue.  As with standing for procedural injuries, irreparable harm from a procedural violation requires an underlying concrete injury or due-process interest, which Plaintiffs have and which will be irretrievably lost if the Vice President proceeds under the Electoral Count Act.  Under the circumstances, Plaintiffs' procedural harms also are irreparable. *Commissioner v. Shapiro*, 424 U.S. 614, 629-30 (1976).

### C.      Plaintiffs need not demonstrate irreparable harm for declaratory relief.

"The traditional prerequisite for the granting of injunctive relief, demonstration of irreparable injury, is not a prerequisite to the granting of a declaratory relief" because the Declaratory Judgments Act "provides an adequate remedy and at law, and hence a showing of irreparable injury is unnecessary."  10 FED. PROC., L. ED. §23 :4 (citing 28 U.S.C. § 2201 and *Steffel v. Thompson*, 415 U.S. 452 (1974)).  "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  FED. R. CIV. P. 57.  In fact, the central purpose of the Declaratory Judgments Act is to enable parties to adjudicate their rights without waiting until after the injury has occurred or damages have accrued.  *See, e.g., Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.,* 523 F.Supp.2d 376, 381 (S.D.N.Y. 2007) (citing *In re Combustion*, 838 F.2d 35, 36 (2d Cir. 1988)).

In any event, the irreparable-harm requirement for injunctive relief does not apply to declaratory relief.  The fact that another remedy would be equally effective affords no ground for declining declaratory relief:  "Rule 57 … expressly states that the availability of an alternative remedy does not prevent the district court from granting a declaratory judgment."  *Marine Chance Shipping v. Sebastian*, 143 F.3d 216, 218-19 (5th Cir. 1998); *see also* 28 U.S.C. §2201; *Hurley v.*

*Reed,* 288 F.2d 844, 848 (D.C. Cir. 1961); *Tierney v. Schweiker,* 718 F.2d 449, 457 (D.C. Cir. 1983).   A prior formal or informal demand to the defendant is not a prerequisite to seeking declaratory relief, *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989), and showing "irreparable injury… is not necessary for the issuance of a declaratory judgment." *Tierney,* 718 F.2d at 457 (*citing Steffel v. Thompson,* 415 U.S. 452, 471-72 (1974)).  Thus, even if not entitled to injunctive relief, Plaintiffs still would be entitled to declaratory relief.

The requested declaratory judgment would terminate the controversy, offer relief from uncertainty, and eliminate the need for Plaintiffs to suffer the irreparable harm from the certainty that their electoral votes would be disregarded that would occur if Defendant Vice President Pence were to count electoral votes, and resolve disputes regarding competing slates of electors, under the unconstitutional provisions of the Electoral Count Act, rather than the procedures set forth in the Twelfth Amendment.

### D.      The balance of equities favors Plaintiffs.

"Traditional equitable principles requiring the balancing of public and private interests control the grant of declaratory or injunctive relief in the federal courts."  *Webster v. Doe*, 486 U.S. 592, 604-05 (1988).  The scope of requested injunctive relief—directing Defendant Pence to carry out his duties as President of the Senate and as Presiding Officer for the January 6, 2021 Joint Session of Congress in compliance with the U.S. Constitution—is drawn as narrowly as possible and does not require Defendant Pence to take any affirmative action apart from those he is authorized to take under the Twelfth Amendment.  Moreover, it is difficult to imagine how the relief requested, which *expands rather than restricts* Defendant's discretion and authority, by eliminating facially unconstitutional restrictions on the same could cause any hardship to Defendant.

### E.     The public interest favors Plaintiffs.

The last stay criterion is the public interest.  Where the parties dispute the lawfulness of government actions, the public interest collapses into the merits:  "It is always in the public interest to prevent the violation of a party's constitutional rights."  *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (alterations omitted); *cf. Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 595 (5th Cir. 2006) ("injunction serves the public interest in that it enforces the correct and constitutional application of Texas's duly-enacted election laws")  *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("no public interest in the perpetuation of unlawful [government] action");  *accord ACLU v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003) ("the public interest [is] not served by the enforcement of an unconstitutional law") (interior quotation omitted); *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994) (recognizing "greater public interest in having governmental agencies abide by the federal laws"); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005).

Here the declaratory and injunctive relief sought vindicates both Defendant Vice President's plenary authority as President of the Senate and Presiding Officer to count electoral votes, as well as the constitutional rights of the Plaintiffs to have their electoral votes counted in the manner that the Constitution provides, the rights of the Arizona legislative Plaintiffs under the Electors Clause to appoint Presidential Electors for the State of Arizona, and the right of Rep Gohmert and those he represents to have their vote counted in the manner that the Twelfth Amendment provides.

## <u>CONCLUSION</u>

Therefore, it is respectfully requested that the Court grant Plaintiffs' Motion and the Court

grant a declaratory judgment declaring 3 U.S.C. §5 - §15 unconstitutional on its face for violating

the specific delegated authorities of the Twelfth Amendment of the Constitution.

Dated: December 28, 2020

Respectfully submitted,

/s/William L. Sessions

Howard Kleinhendler
Howard Kleinhendler Esquire
NY Bar No. 2657120
369 Lexington Ave., 12th Floor
New York, New York 10017
Tel: (917) 793-1188
Fax: (732) 901-0832
Email: howard@kleinhendler.com

William Lewis Sessions
Texas Bar No. 18041500
Sessions & Associates, PLLC
14591 North Dallas Parkway, Suite 400
Dallas, TX 75254
Tel: (214) 217-8855
Fax: (214) 723-5346 (fax)
Email: lsessions@sessionslaw.net

Lawrence J. Joseph
DC Bar No. 464777
Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: (202) 355-9452
Fax: 202) 318-2254
Email: ljoseph@larryjoseph.com

Julia Z. Haller
DC Bar No. 466921
Brandon Johnson
DC Bar No. 491370
Defending the Republic
601 Pennsylvania Ave., NW
Suite 900
South Building
Washington, DC 20004
Tel: (561) 888-3166
Fax:
Email: hallerjulia@outlook.com
Email: brandoncjohnson6@aol.com

*Counsel for Plaintiffs*

## CERTIFICATE OF CONFERENCE

I hereby certify that as counsel for Plaintiffs, I have complied with the meet and confer requirement in Local Rule CV-7(h) in the following respects: I have personally contacted and spoken this morning with Gregory F. Jacob, Counsel for Vice President Michael R. Pence, the Defendant. I have caused Mr. Jacob to receive a copy of the Complaint for Expedited Declaratory and Emergency Injunctive Relief and a duplicate unfiled copy of Plaintiffs' Emergency Motion for Expedited Declaratory Judgment and Emergency Motion for Injunctive Relief without the certificate of conference or certificate of service. Mr. Jacob, co-counsel Larry Joseph, and I discussed the legal merits of the foregoing motion at length. Mr. Jacob advised that he needed to consult with his client, who was absent from his office and on vacation, and would contact Mr. Joseph and me regarding Vice President Pence's position on the merits of the motion after conferring with his client. Counsel for Defendant Pence stated that he did not presently have authority to agree to or oppose the motion. In light of the emergency nature of this motion and the fact that the parties' counsel could not presently agree on the merits of the motion, undersigned counsel has concluded that the parties are presently at an impasse, leaving an open issue for the court to resolve. Undersigned counsel will immediately advise the Court of any change in the parties' positions.

Dated: December 28, 2020

William Lewis Sessions
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the date specified below, I electronically filed the foregoing motion (together with its accompanying proposed order) with the Clerk of the Court using the CM/ECF system. In addition, because counsel for the defendant has not yet filed an appearance, I served one true and correct copy via Federal Express, next-day delivery, on the defendant and on the United States Attorney for the Eastern District of Texas at the following addresses, with a courtesy copy via facsimile and/or email to the addresses specified:

Gregory F. Jacob
Counsel to the Vice President
Office of the Vice President
Eisenhower Executive Office Building
Washington, DC 20501
E-mail: gregory.f.jacob@ovp.eop.gov

Stephen J. Cox
United States Attorney
350 Magnolia Ave., Suite 150
Beaumont, Texas 77701
Tel. (409) 839-2538
Fax: (409) 839-2550
Email: stephen.j.cox@usdoj.gov

Dated: December 28, 2020

William Lewis Sessions
*Counsel for Plaintiffs*