# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

LOUIE GOHMERT, *et al.*,

Plaintiffs,

v.

THE HONORABLE MICHAEL R. PENCE, VICE PRESIDENT OF THE UNITED STATES, in his official capacity,

Defendant.

Case No. 6:20-cv-00660

## DEFENDANT'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR EXPEDITED DECLARATORY JUDGMENT AND EMERGENCY INJUNCTIVE RELIEF

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

CONCLUSION .................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) ................................ 7

*Castanon v. United States*, 444 F. Supp. 3d 118 (D.D.C. 2020) ...................... 4

*Common Cause v. Biden*, 748 F.3d 1280 (D.C. Cir. 2014) ................. 4

*Donelon v. Louisiana Div. of Admin. Law ex rel. Wise*, 522 F.3d 564 (5th Cir. 2008)................... 3

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)........................ 5

*Escambia Cty., Fla. v. McMillan*, 466 U.S. 48 (1984) ................. 7

*Ex Parte Young*, 209 U.S. 123 (1908) ................. 6

*Franklin v. Massachusetts*, 505 U.S. 788 (1992). ................. 5

*Frye v. Anadarko Petroleum Corp.*, 9553 F.3d 285 (5th Cir. 2019)................. 3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................. 5, 6

*MedImmunte, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ................. 3

*Muskrat v. United States*, 219 U.S. 346 (1911)................. 3

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) ................. 3

*Poe v. Gerstein*, 417 U.S. 281 (1974) ................. 5

*Robinson v. Hunt County, Texas*, 921 F.3d 440 (5th Cir. 2019)................. 5

*Texas v. United States*, 328 F. Supp. 3d 662 (S.D. Tex. 2018)................. 7

*United States v. Brewster*, 408 U.S. 501 (1972) ................. 6

**Constitution and Statutes**

3 U.S.C. § 15................. 2

3 U.S.C. § 5................. 2

U.S. Const. art. I, § 6, cl. 1................. 4

U.S. Const., amend. XII. ................................................................................................... 2

U.S. Const., Art. II, § 2, cl. 2 ......................................................................................... 1

**Other Authorities**

Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*,

   56 Fla. L. Rev. 541 (2004). ....................................................................................... 2

## INTRODUCTION

Plaintiffs have presented this Court with an emergency motion raising a host of weighty legal issues about the manner in which the electoral votes for President are to be counted.  But these plaintiffs' suit is not a proper vehicle for addressing those issues because plaintiffs have sued the wrong defendant.  The Vice President—the only defendant in this case—is ironically the very person whose power they seek to promote.  The Senate and the House, not the Vice President, have legal interests that are sufficiently adverse to plaintiffs to ground a case or controversy under Article III.  Defendant respectfully request denial of plaintiffs' emergency motion because the relief that plaintiffs request does not properly lie against the Vice President.

## BACKGROUND

The Constitution of the United States establishes the process for the election of a President and Vice President of the United States.  The Electors Clause of Article II provides, "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress; but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector."  U.S. Const., Art. II, § 2, cl. 2.  The Twelfth Amendment then describes the process by which these Electors cast their ballots for President and those ballots are counted:

> The Electors shall meet in their respective states and vote by ballot for President and Vice-President, . . . they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President . . . ; The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted; The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall

1

be taken by states, the representation from each state having one vote. . . .

U.S. Const., amend. XII.

Following a century of debate over the appropriate process under the Constitution for counting electoral votes and resolving any objections thereto, Congress enacted the Electoral Control Act of 1887. *See* Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 Fla. L. Rev. 541, 551-56 (2004). That Act sets forth a procedure by which the Senate and the House of Representatives can, jointly, decide upon objections to votes or papers purporting to certify electoral votes submitted by the States. 3 U.S.C. § 15. It further sets forth a procedure for determining a controversy as to the appointment of electors. 3 U.S.C. § 5.

Plaintiffs, who are the U.S. Representative for Texas' First Congressional District, together with the slate of Republican Presidential Electors for the State of Arizona, filed this lawsuit and emergency motion on Sunday, December 27, 2020, challenging the constitutionality of these provisions of the Electoral Count Act. Plaintiffs allege that the procedures violate the Electors Clause of Article II and the Twelfth Amendment because they "take[] away the authority given to the Vice-President under the Twelfth Amendment" Mot. at 19, and "exceeded the power of Congress to enact," Mot. 22. They seek, *inter alia*, a declaratory judgment that "Sections 5 and 15 of the Electoral Count Act, 3 U.S.C. §§ 5 and 15, are unconstitutional insofar as they conflict with and violate the Electors Clause and the Twelfth Amendment" and that Vice President Pence "may exercise the exclusive authority and sole discretion in determining which electoral votes to count for a given State," along with related injunctive relief.

## ARGUMENT

The Vice President is not the proper defendant to this lawsuit. "When considering a

declaratory judgment action, a district court must engage in a three-step inquiry.  The court must ask (1) whether an actual controversy [of legal interests] exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Frye v. Anadarko Petroleum Corp.*, 9553 F.3d 285, 293-94 (5th Cir. 2019) (internal citations and quotation marks omitted).  With respect to the first inquiry, the Supreme Court has required that a dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *MedImmunte, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and alteration omitted).  Plaintiffs' lawsuit against the Vice President does not meet that standard.

Plaintiffs' suit seeks to empower the Vice President to unilaterally and unreviewably decide objections to the validity of electoral votes, notwithstanding the Electoral Count Act.  Plaintiffs are thus not sufficiently adverse to the legal interests of the Vice President to ground a case or controversy under Article III.  *Cf. Muskrat v. United States*, 219 U.S. 346, 361 (1911) (no case or controversy where "the United States is made a defendant to this action, but it has no interest adverse to the claimants" who are simply seeking "to determine the constitutional validity of this class of legislation"); *Donelon v. Louisiana Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 568 (5th Cir. 2008) (no case or controversy where the plaintiff head of a state agency created a situation "where the state is essentially suing itself"); *Okpalobi v. Foster*, 244 F.3d 405, 409 (5th Cir. 2001) (en banc) ("Although, in this facial attack on the constitutionality of the statute, consideration of the merits may have strong appeal to some, we are powerless to act except to say that we cannot act: these plaintiffs have no case or controversy with these defendants, the Governor and Attorney General of

3

Louisiana, and consequently we lack Article III jurisdiction to decide this case.").   Indeed, if plaintiffs' suit were to succeed, the result would be to *remove* any constraint the Electoral Count Act places on the Vice President.

To the extent any of these particular plaintiffs have a judicially cognizable claim, it would be against the Senate and the House of Representatives.   After all, it is the role prescribed for the Senate and the House of Representatives in the Electoral Count Act to which plaintiffs object, not any actions that Vice President Pence has taken.   Specifically, plaintiffs object to the Senate and the House of Representatives asserting a role for themselves in determining which electoral votes may be counted—a role that these plaintiffs assert is constitutionally vested in the Vice President.   *Cf. Common Cause v. Biden*, 748 F.3d 1280, 1285 (D.C. Cir. 2014) ("In short, Common Cause's alleged injury was caused not by any of the defendants, but by an 'absent third party'—the Senate itself."); *Castanon v. United States*, 444 F. Supp. 3d 118, 133 (D.D.C. 2020) (three-judge court) (citing *Common Cause* and noting that plaintiffs' injuries were not caused by defendants (including the Vice President) but by "the House and the Senate.").   And it would be the Senate and the House of Representatives that are best positioned to defend the Act.[1]   Indeed, as a matter of logic, it is those bodies against whom plaintiffs' requested relief must run.   The House of Representatives has already expressly recognized those interests by informing the Defendant that it intends to present the Court numerous arguments in response to plaintiffs' motion.   By contrast, a suit to establish that the Vice President has discretion over the count, *filed against the Vice President*, is a walking legal contradiction.

---

[1] The United States disagrees with plaintiffs' unsupported assertion that the Constitution's Speech or Debate Clause does not apply to the Vice President in his official capacity as the President of the Senate.   *See* U.S. Const. art. I, § 6, cl. 1("[F]or any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."); Mot. 12.

Plaintiffs also have not established that they are entitled to the extraordinary relief of an injunction against the Vice President. "According to well-established principles of equity, a plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A district court properly refuses to issue an injunction when it is anticipated that a defendant will "respect [a] declaratory judgment." *See Robinson v. Hunt County, Texas*, 921 F.3d 440, 450 (5th Cir. 2019) (quoting *Poe v. Gerstein*, 417 U.S. 281, 281 (1974)). Plaintiffs have made no allegation that the Vice President would refuse to respect a declaratory judgment issued against him. The extraordinary remedy of an injunction is accordingly unnecessary and inappropriate in this case. *Cf. Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992).

It is the responsibility of the Department of Justice, on behalf of the United States, to also raise to the Court's attention a number of threshold issues, which plaintiffs themselves anticipate at pp. 4-15 of their opening brief. First, it is well established that Article III standing requires a plaintiff to "have suffered an 'injury in fact' . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'"; the injury must be "fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court"; and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted). Here, Representative Gohmert identifies as his injury the mere possibility that "he will not be able to vote as a Congressional Representative in accordance with the

Twelfth Amendment, and instead, his vote in the House, if there is disagreement, will be eliminated by the current statutory construct under the Electoral Count Act, or diluted by votes of the Senate and ultimately by passing the final determination to the state Executives."[2]  Mot. at 4-5.  Plaintiff Arizona Electors claim a theoretical injury in the "debasement of their votes."  Mot. at 6.  But the declaration and injunction these plaintiffs seek would not ensure any particular outcome that favors plaintiffs.  They do not seek an order requiring that the presidential election be resolved by the House of Representatives, or that the Republican Electors' votes from Arizona be counted, and even if plaintiffs were granted the relief that they do request, any possibility that those events might occur depends on speculation concerning objections that may or may not be raised in the future, and exercises of discretion concerning those as-yet-unraised objections.  Thus, these plaintiffs have not adequately alleged redress for their specifically-asserted conjectural injuries.  *See Lujan*, 504 U.S. at 568-69 (finding no standing where plaintiffs had not sued all of the relevant parties needed to provide redress).  The Senate and the House of Representatives, by contrast, could take action to redress such injury by amending the Electoral Control Act.

These plaintiffs' claims against the Vice President in his capacity as President of the Senate also fail to address the Constitution's Speech and Debate Clause, which prevents the other Branches of Government from questioning Congress in connection with "legislative acts," which have "consistently been defined as an act generally done in Congress in relation to the business before it."  *United States v. Brewster*, 408 U.S. 501, 512 (1972).  *See also supra* n.1.  Moreover, nothing in *Ex Parte Young*, 209 U.S. 123 (1908), or its progeny supports these particular plaintiffs' novel suit to enjoin the Vice President in the exercise of his constitutional authority as President

---

[2] Ironically, Representative Gohmert's position, if adopted by the Court, would actually deprive him of his opportunity as a Member of the House under the Electoral Count Act to raise objections to the counting of electoral votes, and then to debate and vote on them.

of the Senate.  *See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015) (looking to history to understand the scope of equitable suits to enjoin executive action).  To the extent the Court is inclined to address these and other issues, the House of Representatives has informed the Defendant that it intends to present this Court with a number of arguments in response to plaintiffs' motion.  In light of Congress's comparative legal interests in the Electoral Count Act, Defendant respectfully defers to the Senate and the House of Representatives, as those bodies see fit, to present those arguments.

Finally "[i]t is a well established principle . . . that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case."  *Escambia Cty., Fla. v. McMillan*, 466 U.S. 48, 51 (1984); *see also Texas v. United States*, 328 F. Supp. 3d 662, 710 (S.D. Tex. 2018) ("There is no need to rule on the Take Care Clause issue because the Court has reached a conclusion on a non-constitutional basis.").  Plaintiffs' motion presents several novel constitutional issues with respect to the Act.  But this Court can and should resolve this motion under the well settled requirement of true and not artificial adversity or the other threshold issues outlined above, particularly given the time constraints and expedited briefing necessitated by Plaintiffs' recent filings.

## CONCLUSION

The relief requested by plaintiffs does not properly lie against the Vice President, and plaintiffs' suit can be resolved on a number of threshold issues.  For the foregoing reasons, the Court should deny plaintiffs' request for expedited declaratory judgment and emergency injunctive relief against the Vice President.

Dated: December 31, 2020                     Respectfully submitted,


                                            JEFFREY BOSSERT CLARK
                                            Acting Assistant Attorney General

                                            JENNIFER B. DICKEY
                                            Principal Deputy Assistant Attorney General

                                            */s/ John V. Coghlan*
                                            JOHN V. COGHLAN
                                            Deputy Assistant Attorney General
                                            Federal Programs Branch
                                            U.S. Department of Justice, Civil Division
                                            950 Pennsylvania Avenue N.W.
                                            Washington, DC 20530
                                            Tel: (202) 353-2793
                                            Email: john.coghlan2@usdoj.gov

                                            *Attorneys for Defendant*

8

**CERTIFICATE OF SERVICE**

I certify that on December 31, 2020, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ John V. Coghlan*
JOHN V. COGHLAN
Deputy Assistant Attorney General
Federal Programs Branch
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue N.W.
Washington, DC 20530
Tel: (202) 353-2793
Email: john.coghlan2@usdoj.gov

1

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| LOUIE GOHMERT, *et al.*,<br><br>Plaintiffs,<br><br> v.<br><br>THE HONORABLE MICHAEL R. PENCE, VICE PRESIDENT OF THE UNITED STATES, in his official capacity,<br><br>Defendant. | Case No. 6:20-cv-00660 |

## [PROPOSED] ORDER DENYING EMERGENCY INJUNCTIVE RELIEF

Plaintiffs' Emergency Motion for Expedited Declaratory Judgment and Emergency Motion for Injunctive Relief filed December 28, 2020 is hereby DENIED.

_____

Judge Jeremy D. Kernodle