## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

Louie Gohmert, Tyler Bowyer,

Nancy Cottle, Jake Hoffman,

Anthony Kern, James R. Lamon,

James Moorhead, Robert Montgomery,

Loraine Pellegrino, Greg Safsten,

Kelli Ward and Michael Ward

Plaintiffs


v.                                          Civil Action No. 6:20-cv-00660

                                            (Election Matter)


The Honorable Michael R. Pence, Vice

President of the United States,

in his official capacity,

Defendant

### **Emergency Motion of Timothy P. Dowling to Dismiss**


**To the Honorable Jeremy D. Kernodle, United States District Court Judge:**

Timothy P. Dowling ("Dowling") hereby files his motion to dismiss this case. He does so pursuant to Federal Rule of Civil Procedure 12 (for among other reasons, lack of subject matter jurisdiction, "failure to state a claim upon which relief can be granted," and "failure to join a party under Rule 19;" *see* Fed. R. Civ. Pro. 12(b)), and any other applicable law. Dowling represents no person or entity other than himself. Dowling has also filed a motion to intervene. If the Court does not grant Dowling's motion to intervene, Dowling requests that the Court consider this pleading as an amicus brief. Dowling believes that the filing of an amicus brief is appropriate for the reasons stated in the motion for leave to file amicus brief filed by John Campbell (Document No. 13). Given the immediate relief sought by Plaintiffs, Dowling's motion to dismiss should be considered at this time.   In support of his motion to intervene and his motion to dismiss Dowling would show the Court the following.

1. **Summary of Dowling's arguments**

Plaintiffs ask this Court to do what no court in the history of our Republic has ever done: convert the loser of a free and fair Presidential election (as determined by the Administrations' own Justice Department) into the winner. Plaintiffs are twelve Republicans, led by the Chair of the Arizona Republican Party (Kelli Ward), ten other purported (but not actual) Presidential Electors from Arizona, and the Republican Congressman who resides in the Congressional

district where this Court sits. The Defendant is the Vice President of the United States, who was on the losing ticket in the 2020 Presidential election. Accordingly Defendant would be delighted if this Court grants the preposterous relief requested by Plaintiffs. There are prosaic procedural grounds to dismiss this case even if the substantive relief requested by Plaintiffs was not absurd (see pages 15-25).

There are also four procedural bases to dismiss this case. First, Plaintiffs have no standing, and this Court has no jurisdiction to address this "friendly suit" (see pages 4-6).  Second, Plaintiffs have no evidence to support their claims that there was sufficient electoral fraud to overturn the Presidential election results (a conclusion shared by the former Attorney General of the United States, William Barr, and many courts around the country) (see pages 12-13). Third, there are factual disputes that make the extremely summary disposition of this case requested by Plaintiffs inappropriate (see pages 10-11). Fourth, Plaintiffs have failed to show that they are entitled to injunctive relief (see pages 13-14). Plaintiffs must hurdle each of these procedural obstacles to even be entitled to address the constitutional questions they raise, yet they can surmount none of them.

Even if this Court does not dismiss this case at this time, there are multiple reasons that prevent the Court from properly making a summary immediate ruling granting injunctive relief as Plaintiffs request. First, Plaintiffs chose to ignore their obligation to make certain persons who are clearly indispensable parties under

Federal Rule of Civil Procedure 19 defendants (see pages 6-8). That must be corrected if this case proceeds any further. Second, it appears that as a result of 28 U.S.C. 2403(a), the Attorney General of United States must be given an opportunity to intervene before this case proceeds any further (see pages 8-9). Third, Plaintiffs have failed to plead fraud with the "particularity" required by Federal Rule of Civil Procedure 9, and that must be corrected (see pages9-10). But delay based on the points is not the appropriate thing to do. Rather his Court should dismiss this case with prejudice at this time.

### 2.  Plaintiffs lack standing and this  Court does not have subject matter jurisdiction over this "friendly suit"

One of the twelve Plaintiffs in this case is a Republican member of the House and Representatives, and the other eleven plaintiffs are Republicans who purportedly are proper presidential electors from Arizona (the "Purported Electors"). Very extensive litigation occurred in Arizona with the goal of having the Purported Electors be Arizona's electors in the Electoral College. That litigation went up to the Arizona Supreme Court with the result that the Purported Electors were not determined to be Arizona's actual Presidential Electors. See https://patch.com/arizona/phoenix/az-supreme-court-affirms-ruling-dismiss-gop-election-lawsuit.

One of the Plaintiffs in this case, Ms. Kelli Ward, is the Chair of the Arizona Republican Party. Ms. Ward stated a few days ago that this lawsuit is a "friendly lawsuit", we "love Vice President Pence", that this suit was filed to assist him in doing what she considers to be his job, and to "give him the tools necessary." *See* https://www. https://www.youtube.com/watch?v=eGLXD8zblJU. Defendant Pence has the relevant "tools" the law makes available to him regarding the upcoming count of Presidential Electors on January 6, 2021, and he does not need the help of Ms. Ward  (or of the other Plaintiffs), or an advisory opinion from this Court, to use whatever legal "tools" he may have. Ms. Ward's video is a party admission of what is obvious -- there is no real case or controversy here. All Plaintiffs and the lone Defendant wish to achieve the same result: have Donald Trump remain as the President of the United States after January 20, 2021. This lawsuit is a phony dispute, and this Court should decline Plaintiffs' invitation to swim in these political waters where it does not have proper subject matter jurisdiction over this bogus alleged controversy. The federal courts are not in business to provide advisory opinions over fake controversies.

The only credibly arguable plaintiff with standing to make the argument that the Electoral Count Act ("ECA") is unconstitutional is in fact the Defendant in this case. The Vice President arguably would have standing as a plaintiff to argue something like "the ECA is unconstitutional, and I should not be required on

January 6, 2021 to comply with its unconstitutional procedures regarding Presidential Electoral votes." The proper and indispensable defendants in a lawsuit by the Vice President making such an allegation would at a minimum be the United States, Joseph Biden, Kamala Harris, Arizona's actual certified (Democratic) Electors. Instead this person who arguably does have standing to make this unconstitutionality argument is <u>not</u> the plaintiff in this case, but the defendant, which furthermore underscores the "friendly" nature of this bogus dispute. Of course if the Vice President was the plaintiff in this case there would be no proper venue in this Court. *See* 28 U.S.C. 1391.

Plaintiffs have no standing, and since there is no genuine case or controversy here, this Court lacks proper subject matter jurisdiction. That means that this Court must dismiss this case, because Federal Rule of Civil Procedure 12(h)(3) provides that "if the court determines at any time that it lacks subject matter jurisdiction, the court <u>must</u> dismiss the action" (emphasis added).

### 3.  The Court should make no rulings in this case until Plaintiffs' failure to join indispensable parties under Rule 19 is corrected

This is a "friendly suit" where the Defendant wishes to achieve the same ultimate result as Plaintiffs. Plaintiffs' Complaint (Document No. 1) violates Federal Rule of Civil Procedure 19 (b), which provides in relevant part that "a person who is subject to service of process and whose joinder will not deprive the

6

court of subject-matter jurisdiction <u>must be joined</u> as a party if… that person claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may… as a practical matter impair or impede the person's ability to protect the interest." Plaintiffs' failure to name as defendants genuine adverse parties, which  at a minimum would include the United States,  Joseph Biden and Kamala Harris (whose interests are directly impacted by the relief Plaintiffs seek), and  Arizona's actual certified (Democratic) Electors as defendants (and perhaps the Congress), means Plaintiffs have clearly violated Rule 19(a)(1)(B).

This violation is especially reprehensible because Rule 19(c) unequivocally states that "when asserting a claim for relief a party must state… the name, if known, of any person who is required to be joined if feasible but is not joined and… the reasons for not joining that person." Clearly Plaintiffs know who the Democratic nominees for President and Vice President are and who the Democratic Arizona Electors (the "Actual Electors") are. The Complaint does not state why they were not joined and nor does it offer any explanation for why Plaintiffs chose to join as a defendant only the "friendly" defendant Vice President Pence.  When a person "has not been joined as required, the court <u>must</u> order that the person be made a party." Fed. R. Civ. Pro. 19(a)(2) (emphasis added). Therefore if this Court does not dismiss this case, the Court must enter in order at a

7

minimum requiring that the United States, Mr. Biden, Ms. Harris, and the Actual Electors be made defendants, and then give them a sufficient opportunity to oppose the relief sought by Plaintiffs before the Court makes any rulings.

### 4. Consistent with 28 U.S.C. 2403(a) the Court should make no ruling until the Attorney General of the United States has intervened in this case

If a party in a federal lawsuit contends that a federal statute affecting the public interest is unconstitutional, the court "shall certify such fact to the Attorney General," and permit him or her to intervene in the case. 28 U.S.C. 2403(a). There is an exception if the "United States or any agency, officer or employee thereof is … a party", and superficially this exception may seem to apply because the Defendant is the Vice President. However the Defendant is not a party who is adverse to Plaintiffs, as all of the present parties seek a ruling that the statutes in question in this case are unconstitutional since they believe that would result in Donald Trump remaining as the President. Therefore if the Court i does not dismiss this case at this time, it must permit the Attorney General to intervene to defend the constitutionality of the federal statutes challenged by Plaintiffs. Alternatively Dowling requests that he and the other parties be given adequate time to examine the legal question of whether the above exception in section 2403(a) applies in the bizarre lineup of the parties here where they are seek the same

ultimate result, and provide the results of that research in briefs to the Court before the Court makes any rulings.

5. **If the Court does not dismiss this case at this time, it should not make any rulings until after Plaintiffs have complied with Federal Rule of Civil Procedure 9(b)**

Plaintiffs Complaint is premised on alleged "massive multi-state electoral fraud committed on Biden's behalf that changed electoral results in Arizona" and what Plaintiffs describe as other "Contested States." Complaint at 2-3 (paragraph 5; emphasis added); id. at 20 (paragraph 57; reference to an allegedly "fraudulently produced election result" in Arizona). Federal Rule of Civil Procedure 9(b) states that "in alleging fraud … a party must state with particularity the circumstances constituting fraud" (emphasis added). Plaintiffs have failed to allege any, or alternatively adequately allege, "circumstances constituting fraud" with "particularity" although they are required to do so.  The best that Plaintiffs do is to allege that "public reports" [that is to say, inadmissible hearsay documents] have highlighted [alleged] wide-spread election fraud in the other Contested States." Complaint at 10, paragraph 26. Such broad brush conclusions from documents that are not admissible in evidence unquestionably do not satisfy Rule 9(b)'s "particularity" requirement (to say nothing about the many courts around the country that Plaintiffs ignore that have failed to find such alleged fraud). Therefore if this Court does not dismiss this case at this time, Court should defer any rulings

in this case until at least ten days after Plaintiffs have filed a pleading that complies with Rule 9(b).

### 6. There are factual disputes in this case, and therefore the immediate and definitive ruling sought by Plaintiffs without any pretrial discovery is inappropriate

In the Complaint and in other pleadings Plaintiffs contend either that there are no factual disputes, or no meaningful ones. This is not accurate. First, obviously the question of whether there was any electoral fraud across the many states alleged by Plaintiffs, or alternatively sufficient electoral fraud to change the result of the Presidential election, is sharply disputed.

Second, Plaintiffs contend that "with the permission and endorsement of the Arizona Legislature" they cast Arizona's electoral votes for President Trump. Complaint at 2 (paragraph 5). On information and belief, Dowling believes that approximately only 17 of the 60 members of the Arizona House supported this alleged action of the Purported Electors and that only five of the 30 members of the Arizona Senate did so.

Furthermore, Dowling cannot improve upon the very recent statement made about this by Northwestern University Law school professor Steven Lubet:

"Rep. Louie Gohmert, along with the eleven Trump/Pence would-be electors from Arizona, sued Vice President Pence in a Texas federal court, seeking to (1) declare the Electoral Count Act unconstitutional, and (2) confer exclusive authority

on Pence to recognize electors, which (3) would mean accepting the votes of the "alternative" slate of Republican electors from Arizona and perhaps other states. Others have addressed the merits of the legal claims. Here, I want to point out that the central factual predicate of the complaint is apparently untrue. The complaint alleges,

"The Arizona Electors have cast Arizona's electoral votes for President Donald J. Trump on December 14, 2020, at the Arizona State Capitol **with the permission and endorsement of the Arizona Legislature**" (emphasis added).

As far as I can tell, the bolded allegation is a false statement of fact. Although the eleven Trump electors, who are also plaintiffs in the case, purported to cast votes for Trump/Pence on December 14, they had at most the support of  22 Arizona legislators (out of 90) who signed a purported "joint resolution,"  which was manifestly not the endorsement of *the* Arizona Legislature (which appears not even to have been in session at the time). The assertion that the actual Arizona legislature endorsed the Republican slate is material to the Gohmert complaint, as it comprises the underlying factual basis for the claimed dispute over "which electoral votes may be counted." Without the so-called legislative endorsement, there could be no "competing slates of Republican and Democratic electors" for Pence to choose between."https://www.thefacultylounge.org/

The forgoing makes it very clear that given these factual disputes, Rule 57, which Plaintiffs rely on for this Court to make the most consequential ruling imaginable to the citizens of the United States on an expedited basis with no pretrial discovery and no presentation of evidence to this Court, cannot serve as a proper procedural vehicle to grant them the breathtakingly audacious and preposterous relief they seek. Therefore for this reason alone the Court must deny all of the relief sought by Plaintiffs.

### 7.  The Court must dismiss this case because Plaintiffs have no evidence to support the relief they seek

Plaintiff seeks the most expansive relief imaginable--overturning the result of the duly held Presidential election. In order for the Court to even consider such an audacious request, Plaintiffs must produce <u>admissible evidence</u> to support the relief they seek. Their case, like many other post-election cases brought by President Trump or his allies, have the same fundamental flaw: they have no, or insufficient, admissible evidence to support their contentions. Plaintiffs have filed no documents with this Court (not even affidavits of any kind) to support the relief they seek. Plaintiffs have not even deigned to file documentary evidence with the Court that may be evaluated to determine if it merits granting Plaintiffs any relief.

Plaintiffs' Complaint on occasion makes reference to various news reports (e.g., Complaint at 7 n.3; 8 n. 6-8; 10 n. 12-13), but all such reports are inadmissible hearsay. Indeed, any such reports have multiple levels of hearsay, since a "report" by definition contains alleged statements heard by the "reporter" from other people. Plaintiffs of course must establish a hearsay exception for each hearsay statement. They will be unable to do so. Furthermore, Plaintiffs' efforts are focused on what happened in Arizona, and even if the Court was convinced that Arizona's eleven electoral vote should be cast for President Trump, Mr. Biden would still have more than the necessary 270 Electoral votes to become the next

President. There is no evidentiary basis to support the relief sought by Plaintiffs, and this Court should dismiss this case.

### 8.  Plaintiffs are not entitled to any injunctive relief

Plaintiffs in their motion seeking emergency injunctive relief (Document No. 2; the "Injunction Motion") correctly cite the typical four elements for obtaining injunctive relief: the plaintiff is likely to succeed on the merits, he will likely suffer irreparable harm absent the injunctive relief sought, the equities are in his favor, and that injunctive relief is in the public interest. Injunction Motion at 23 (the reference to "23" is to the ECF page number, not page 17 as Plaintiffs have enumerated this motion). However, Plaintiffs conveniently omit an indispensable requirement for obtaining injunctive relief. Federal Rule of Civil Procedure 65(c) states that the court may injunctive relief order "<u>only if</u> the movant gives security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" (emphasis added). Typically a party seeking injunctive relief will inform the Court in its pleading what it believes the appropriate amount of its bond should be under Rule 65(c). Plaintiffs have failed to do so. Dowling submits that the word "party" in this Rule in the present context must justly include the more than 81 million Americans who voted for Mr. Biden instead of for Mr. Trump. For the reasons pointed out below, if Plaintiff's interpretation of the Constitution is adopted, our

nation will be transformed from a democracy into an autocratic one-party state. What is the appropriate amount of a bond to prevent that from happening? Dowling respectfully submits that that amount is one larger than Plaintiffs could ever pay.

For this reason alone, Plaintiffs' inability o comply with Rule 65(c), the Court must deny Plaintiff's any injunctive relief.

Even if Plaintiffs could post this bond, they are not entitled to injunctive relief. First, for all of the reasons pointed out in this pleading, they clearly are not "likely to succeed on the merits." Second, Plaintiffs will not suffer irreparable harm if the legal mechanisms for counting Electoral votes proceeds. Plaintiffs are seeking to disregard the results of a duly held Presidential election where the Republican Majority Leader of the Senate recognized over two weeks ago that the Democratic presidential nominee is now the Present-elect. The "equities" are most definitely not in Plaintiffs' favor, since to do as they ask will be to overturn  the will of the people of the United States in the 2020 Presidential election. Fourth, the usurpation of democracy advocated by Plaintiffs is most definitely not "in the public interest." For all of these reasons the Court must deny Plaintiffs any injunctive relief.

### 9.  Each State tells Defendant Pence who their Presidential Electors are; he does not tell them who they are

The foregoing shows that there are eight independent reasons to deny Plaintiffs any relief and this time, and that there are four independent bases to dismiss this case now (lack of jurisdiction and standing, lack of evidence, factual disputes that make summary disposition inappropriate, and failure to satisfy the requirements for injunctive relief). Even if Plaintiffs could surmount all of these hurdles so that addressing the merits of their substantive arguments was appropriate (which they clearly cannot do), Plaintiffs' statutory and Constitutional arguments are meritless for the reasons explained below.

Plaintiffs' substantive arguments are most concisely summarized in the Injunction Motion at 8-9. Reduced to its essence, their argument is that if a State submits two purported separate slates of Presidential Electors, the Vice President gets to decide which slate he approves. That means that the Vice President, not each of the separate States, decides who each State's Electors are. This outlandish contention plainly violates basic concepts of federalism and a proper constitutional balance of powers, as it would give the person with a direct and massive conflict of interest, the Vice President, the ultimate decision-making role in choosing the next President. Dowling agrees that Defendant opens and counts Electoral votes. But the Vice President does not have the power as Plaintiffs contend to decide WHAT Electoral votes to count. That is decided by each of the separate States of the

15

Union. Each separate State tells the Vice President who its Presidential Electors are. The Vice President does not tell any State who its Electors are. The Vice President's role is merely ministerial, just as it is when he presides in the Senate and announces the result of the Senate's vote on a particular bill, such as "Regarding Senate Bill 1216, the 'ayes' are 57 and the 'nays' are 43." The Vice President when making this announcement does not get to change the vote of any Senator so that the total vote count conforms to his desires. Neither does the Vice President have the power to change the Electoral College votes for President (or Vice President) to conform to his desires. Plaintiffs' contention that he does is entirely antithetical to the democratic principles of our Republic.

Plaintiffs repeat ad nauseam  in their pleadings that the Vice President has the "exclusive authority and sole discretion" under the Twelfth Amendment to decide which votes to count in the apparent hope that repetition of this mantra will cause it to be less outlandish and preposterous that it is. *See, e.g.,* Complaint at paragraphs 63, 70, 71, and 73(C-D); Injunction Motion at 2, 8). Yet Plaintiffs have been unable to refer the Court to even a single legal authority that supports their contention that the sitting Vice President can determine who the next President will be. The Vice President's Constitutional role is entirely ministerial—he open envelopes with certified Electoral votes from the fifty States and simply mathematically announces the votes in those envelopes.

16

If Plaintiffs' position is accepted, our Republic will be transformed from a democracy, where sometimes the President comes from one political party, and at other times he or she comes from the other political party, into a permanent one party autocracy. Here is the simple playbook to make that happen if the Court were to accept Plaintiffs' arguments:

1.   Allege electoral fraud in the states that the Republican candidate for President did not win. Do this even if you do not have any evidence that fraud (if any) is sufficient to change the result of who won the Presidential election in the state.

2.   Republicans send Electors from each state they won, but also, and critically relevant here,  from each state they lost (assuming for the same of argument that was legitimate).

3.   Contend that the Vice President of the United States (who currently is a Republican) has the "sole discretion" to choose which slate of Electors from each State will be recognized from the State's two slates of competing Electors.

4.   The Republican Vice President (in this instance, Defendant Pence) chooses the Republican Electors in all states where the Republican candidate for President won, plus enough additional Republican Electors from States the Republican candidate for President lost to get the Republican Presidential candidate over the 270 College votes threshold he needs to become (or remain) President.

5.   By this simple yet fundamentally fatally constitutionally flawed playbook the current Republican Vice President, and his later successors, forever determines who is elected President of the United States of America (the same would be true if the current Vice President was a Democrat).

The Court should reject out of hand Plaintiffs' absurd contention that this is what the authors of the Constitution intended, or what Congress intended when the ECA was passed.  Surely they did not intend for one person to have the power to

decide who the next President will be, especially when that person has a direct and monumental conflict of interest in the outcome.

Plaintiffs in their Complaint cite a Law Review article co-authored by Edward Foley Complaint at 13 n. 14. Mr. Foley is a law professor at Ohio State University and is an election law expert. He is the former Ohio Solicitor General, and he clerked for the United States Supreme Court (his biographical summary is located here: https://ucom.osu.edu/for-media/faculty-experts/a-m/foley-edward.html).  This is what Professor Foley had to say about issues relevant in this case two days ago:

"The Constitution and the Electoral Count Act of 1887 intended the Jan. 6 session to address a narrow question: Are the electoral votes received by Congress ones cast by electors the states appointed?
This limited inquiry requires Congress simply to authenticate the documents. Remember, these rules were formulated in the 19th century, when there was a realistic risk of counterfeit papers pretending to be official. Thus, the 1887 act requires a state's governor to affix "the seal of the State" to the certificate confirming the appointment of electors.

Further, the 1887 act obligates Congress to consider "conclusive" a state's own "final determination" of litigation over a state's appointment of electors when two conditions are met. The "final determination" must occur by a certain date, Dec. 8 this year, and must be based on state laws existing before Election Day, Nov. 3. Congress instructs governors to provide verification of these two conditions in their certifications.
This is the opposite of Trump allies' feverish imaginings about using the session as an opportunity for congressional fact-finding on whether fraud or error tainted the tally of the state's popular vote.

This provision, part of the 12th Amendment that reengineered the electoral college after the calamitous Jefferson-Burr tie in 1800, presumed that counting a state's electoral votes would be straightforward: The joint session would merely identify the state's electoral votes and add them up.

It would not be Congress's job to second-guess the state's appointment of its own electors. And it certainly would not be Congress's job to let a sitting vice president — as Adams had been in 1796 or Jefferson in 1800 — determine the election's outcome by deciding unilaterally whether or not to count a state's electoral votes. Note that, Vice President Pence.

While the Constitution makes each house of Congress the "judge" of elections to its own body, there's no comparable provision for presidential elections. In fact, it's the reverse. To prevent the electoral college from being subservient to Congress, the Constitution requires Congress to accept whatever the state decides regarding the appointment of its electors.

The constitutionally appropriate venue for claiming fraud in the counting of a state's popular vote, therefore, is the state's own courts. Trump sued there but failed — because his claims lacked merit. Having lost, he can't now relitigate his allegations in a congressional proceeding designed solely to receive what the state sent. As Justice Joseph Bradley explained during the disputed 1876 election, "It is the business and jurisdiction of the State to prevent frauds from being perpetrated in the appointment of its electors, and not the business or jurisdiction of the Congress."

Imagine if Richard Nixon had tried Trump's stunt. Nixon in 1960 had far better grounds for claiming fraud. But it would have been inappropriate for Nixon, who as vice president chaired the joint session, to insist that Congress adjudicate claims that John F. Kennedy's allies in Illinois and Texas had stolen the election. Nixon knew Congress was bound by what the states themselves determined.

 Even more preposterous is the idea that Nixon would have been entitled to unilaterally disqualify the electoral votes from these two states just because he personally distrusted them. Yet that is the desperate argument being made in a new lawsuit brought by Rep.Louie Gohmert (R-Tex.). According to Gohmert, a vice president can dictate the outcome of an election in which he is a candidate. Al Gore could have decided by himself the fate of Florida's electoral votes in 2000.

Giving any individual this kind of self-serving power is contrary to a Constitution that aims at checks and balances" (emphasis added). https://www.washingtonpost.com/opinions/2020/12/29/sorry-president-trump-january-6-is-not-an-election-do-over/

Professor Foley has additional scholarly writing relevant to the present

dispute that is found in the Law Review article cited by Plaintiffs (Complaint at 13

n. 14; *Symposium: How Far Have We Come Since 2000?: Article: The Twelfth*

*Amendment: A Constitutional Ticking Time Bomb*, N. Colvin and E. Foley, 64 U.

Miami L. Rev. 475 (2010) (hereafter the "Foley Article") as follows:

Regarding Presidential Elector disputes Professor Foley concludes that "the Framers must not have anticipated that they were placing an individual likely to have a conflict of interest--the Vice President of the United States--at the center of the storm. Sure enough, the sitting Vice President has been a candidate for President or Vice President, while simultaneously serving in his capacity as President of the Senate. If the Vice President's role is merely ministerial, there is not much of a conflict of interest as a practical matter; but if the Vice President's duty encompasses resolving potentially decisive controversies over which candidate gets a state's electoral votes, then the conflict is monumental." Foley Article at 481 (emphasis added); *accord* Bruce Ackerman & David Fontana, *Thomas Jefferson Counts Himself into the Presidency*, 90 Va. L. Rev. 551, 556 (2004) ("The Vice-President … is a natural candidate in the next presidential contest. It is an obvious mistake to designate him as the presiding officer over the electoral vote count.").

Professor Foley also drew these additional very relevant conclusions:

"[Supreme Court Associate] Justice [Joseph] Bradley [Justice Bradley was a member of the Electoral Commission that resolved the disputed 1876 Presidential Commission; that dispute lead to the Electoral Count Act at issue in this case] first concluded that the President of the Senate has merely ministerial powers, with no authority to conduct any investigation behind the certificates; any proper investigation "must be performed and exercised by the two Houses." But, Bradley noted that the "extreme reticence" of the Constitution left serious doubt about whether Congress had any power to go behind the returns. Bradley turned next to Article II of the Constitution, which appeared to ensure that the "mode of

20

<u>appointment belong exclusively to the State</u>. Congress has nothing to do with it, and no control over it, except … to determine the time of choosing the electors, and the day on which they shall give their votes." Thus, Bradley concluded, the <u>state controls all of the mechanics of the elections</u>.  However, this exclusive power and control of the State is ended and determined when the day fixed by Congress for voting has arrived, and the electors have deposited their votes and made out the lists and certificates required by the Constitution. Up to that time the whole proceeding (except the time of election) is conducted under State law and State authority. All machinery, whether of police, examining boards, or judicial tribunals, deemed requisite and necessary for securing and preserving the true voice of the State in the appointment of electors, is prescribed and provided for by the State itself.

 With this timing in mind, Bradley argued that "the findings and recorded determinations of the State board or constituted authorities <u>[should be] binding and conclusive</u> since the State can only act through its constituted authorities[.]" <u>Addressing whether this meant that Congress must accept potentially fraudulent results in the appointment of electors, Justice Bradley concluded that Congress has no jurisdiction to do otherwise because it is entirely within the state's jurisdiction to prevent frauds</u>.  Florida statute imposed a duty upon the Florida governor to certify the returns, and Justice Bradley held that the certificate must at least be prima facie evidence of a valid return. Justice Bradley summarized his conclusion as follows:

 The governor's certificate is prima-facie evidence that the State canvassers performed their duty. Indeed, it is conceded by the objectors that they made a canvass and certified or declared the same. It is not the failure of the board to act, or to certify and declare the result of their action, but an illegal canvass, of which they complain. To review that canvass, in my judgment, the Houses of Congress have no jurisdiction or power.”

Foley Article at 508-09 (footnotes omitted) (emphasis added); *see* id. at 508 n. 192 (“Going further, Justice Bradley noted that the prohibition against federal office holders acting as electors makes clear that the Constitution intended to remove any congressional or federal influence from the process).”

    The foregoing makes it clear that Arizona and the other 49 States decide who their Presidential Electors are, and neither the Vice President (as Plaintiffs contend) nor Congress has the power to change their decisions. The Purported Electors’

remedy was in the Arizona courts. They vigorous pursued their remedies there to the highest court in Arizona. They lost. They do not have a "do-over" opportunity in this federal Court, and nor will Defendant Pence have an opportunity on January 6, 2021 to reverse the results of how Arizona (or any other state) chose its Presidential Electors.

Professor Foley's conclusion in the document he wrote two days ago cited above is shared by other scholars. One of the co-authors of the document quoted directly below is Neal K. Katyal, a law professor at Georgetown University and a former acting Solicitor General of the United States. Two days ago Professor Katyal had this to say about the issues present here:

""On Monday Representative Louie Gohmert of Texas and other politicians filed a frivolous lawsuit, which has multiple fatal flaws in both form and substance, in an attempt to force the vice president to appoint pro-Trump electors.

But as a matter of constitutional text and history, any effort on Jan. 6 is doomed to fail. It would also be profoundly anti-democratic and unconstitutional.

Both Article II of the Constitution and the 12th Amendment say that the votes of the Electoral College are to be opened by the "president of the Senate," meaning the vice president. The Electoral Count Act, passed in 1887 to avoid chaotic counts like the one that followed the 1876 election, adds important details. It provides a detailed timeline to tabulate electoral votes, culminating with the final count to take place on Jan. 6, and it delineates the powers of the vice president.

He is to be the "presiding officer" (meaning he is to preserve order and decorum), open the ballot envelopes, provide those results to a group of tellers, call for any objection by members of Congress, announce the results of any votes on objections, and ultimately announce the result of the vote.

Nothing in either the text of the Constitution or the Electoral Count Act gives the vice president any substantive powers. His powers are ministerial, and that circumscribed role makes general sense: The whole point of an election is to let the people decide who will rule them. If an incumbent could simply maneuver to keep himself in office — after all, a maneuver to protect Mr. Trump also protects Mr. Pence — the most foundational precept of our government would be gravely undermined. In America, "we the people," not "we, the vice president," control our destiny.

 The drafters of the Electoral Count Act consciously insisted on this weakened role for the vice president. They guarded against any pretense he might have to throw out a particular state's votes, saying that the vice president must open "all certificates and papers purporting to be" electoral votes. They further said, in the event of a dispute, both chambers of Congress would have to disagree with a particular state's slate of electoral votes to reject them. And they made it difficult for Congress to disagree, adding measures such as a "safe harbor" provision and deference to certification by state officials.

In this election, certification is clear. There are no ongoing legal challenges in the states of any merit whatsoever. All challenges have lost, spectacularly and often, in the courts. The states and the electors have spoken their will. Neither Vice President Pence nor the loyal followers of President Trump have a valid basis to contest anything.

To be sure, this structure creates awkwardness, as it forces the vice president to announce the result even when personally unfavorable.

After the close election of 1960, Richard Nixon, as vice president, counted the votes for his opponent, John Kennedy. Al Gore, in perhaps one of the more dramatic moments of our Republic's short history, counted the votes and reported them in favor of George W. Bush.

Watching Mr. Gore count the votes, shut off all challenges and deliver the presidency to Mr. Bush was a powerful moment in our democracy. By the time he counted the votes, America and the world knew where he stood. And we were all lifted up when Mr. Gore, at the end, asked God to bless the new president and vice president and joined the chamber in applause.

Republican leaders — including Senators McConnell, Roy Blunt and John Thune — have recognized the outcome of the election, despite the president's wrath. Mr.

McConnell put it in clear terms: "The Electoral College has spoken. So today, I want to congratulate President-elect Joe Biden."

Notably, Mr. Pence has been silent. He has not even acknowledged the historic win by Kamala Harris, the nation's first female, first African-American and first Asian-American vice president.

He now stands on the edge of history as he begins his most consequential act of leadership. The question for Vice President Pence, as well as other members of Congress, is which side of history he wants to come down on. Can he show the integrity demonstrated by every previous presidential administration? The American people accept a graceful loser, but a sore loser never goes down well in the history books.

We urge Mr. Pence to study our first president. After the Revolutionary War, the artist Benjamin West reported that King George had asked him what General Washington would do now that America was independent. West said that Washington would give up power and go back to farming. King George responded with words to the effect that "if he does that, he will be the greatest man in the world."

Indeed, Washington did so, surrendering command of the army to Congress and returning to Mount Vernon for years until he was elected president. And he again relinquished power eight years later, even though many would have been happy to keep him president for life. Washington in this way fully realized the American Republic, because there is no Republic without the peaceful transfer of power.

And it's now up to Mr. Pence to recognize exactly that. Like all those that have come before him, he should count the votes as they have been certified and do everything he can to oppose those who would do otherwise. This is no time for anyone to be a bystander — our Republic is on the line." https://www.nytimes.com/2020/12/29/opinion/mike-pence-electoral-college-votes-congress.html?action=click&module=Opinion&pgtype=Homepage (emphasis added).

The States have told Defendant Pence, and our Republic, who their

Presidential Electors are. Defendant does not have the power to overrule their

instruction, and reach his own conclusion about who any State's Electors will be.

Since the entire basis of Plaintiffs' suit rests on the contention that Defendant Pence can decide who a State's Presidential Electors are, and that contention is patently meritless, this Court must dismiss this suit with prejudice at this time.

### 10. Conclusion and request for relief

This Court should reject Plaintiffs' invitation to be the first court in American history to overturn the result of a Presidential election. The Court should do so by dismissing this case with prejudice. The grounds to do so are multiple, on both procedural and substantive grounds. On the merits, each of the respective fifty States tell the Vice President who their Presidential Electors are. The Vice President has no statutory or constitutional authority to disagree with them and make his own choices about who their Presidential Electors are.

There are also four procedural bases to dismiss this case. First, Plaintiffs have no standing to bring this suit, and the Court has no jurisdiction to grant Plaintiffs relief in this "friendly suit."   Second, Plaintiffs have no evidence to support their claims that there was sufficient electoral fraud that the Presidential election results should be overturned (these claims were rejected by the former Attorney General of the United States, William Barr, and by many courts around the country). Third,  there are factual disputes that make the extremely summary disposition of this case requested by Plaintiffs inappropriate. Fourth, Plaintiffs

have failed to show that they are entitled to injunctive relief (and they could not post a bond as required by Federal Rule of Civil Procedure 65 of adequate size even if they were otherwise entitled to such relief). Plaintiffs must hurdle each of these procedural obstacles to even be entitled to address the constitutional questions they raise. They can surmount none of them.

Even if this Court does not dismiss this case at this time, there are multiple reasons that prevent the Court from properly making an immediate ruling as Plaintiffs request. First, Plaintiffs chose to ignore their obligation to make certain persons who are clearly indispensable parties under Federal Rule of Civil Procedure 19 defendants. That must be corrected if this case proceeds any further in any way. Second, it appears that as a result of 28 U.S.C. 2403(a), the Attorney General of the United States must be given an opportunity to intervene before this case proceeds any further. Third, Plaintiffs have failed to plead fraud with the "particularity" required by Federal Rule of Civil Procedure 9, and that must be corrected.

This Court should do as so many other courts around our Republic have recently done by denying any relief to those who seek to overturn the results of the 2020 Presidential election. Dowling requests that the Court grant his motion: (1) to intervene by signing the proposed order attached hereto as <u>Exhibit 1</u>; and (2) dismiss this case by signing the proposed order attached hereto as <u>Exhibit 2</u>.

Dowling requests that the Court additionally grant him such further additional relief, whether in law or in equity, as may be just.

_/s/ Timothy P. Dowling_

Pro se

Texas State Bar No. 06083900

8017 Villefranche Dr.

Corpus Christi, TX 78414

(361) 960-3135

Relampago@aol.com

## Certificate of service

The undersigned hereby certifies that counsel for Plaintiffs were served by filing this motion with the Clerk of this Court, and such counsel (and other counsel) were also served by email service on December 31, 2020 as follows:

lsessions@sessionslaw.net
William Sessions

howard@kleinhendler.com
Howard Kleinhendler

ljoseph@larryjoseph.com
Lawrence Joseph

hallerjulia@outlook.com
Julia Haller

brandoncjohnson6@aol.com
Brandon Johnson

gregory.f.jacob@ovp.eop.gov

Gregory F. Jacob

stephen.j.cox@usdoj.gov
Stephen J. Cox

Christopher.Healy@usdoj.gov
Christopher Healy

Tanya.Senanayake@usjog.gov

Tanya Senanayake

alan.kennedy@aya.yale.edu

Alan Kennedy

*/s/ Timothy P. Dowling*