## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| LOUIE GOHMERT, TYLER BOWYER, NANCY COTTLE, JAKE HOFFMAN, ANTHONY KERN, JAMES R. LAMON, SAM MOORHEAD, ROBERT MONTGOMERY, LORAINE PELLEGRINO, GREG SAFSTEN, KELLI WARD and MICHAEL WARD,<br><br>       Plaintiffs,<br><br>  v.<br><br>THE HONORABLE MICHAEL R. PENCE, VICE PRESIDENT OF THE UNITED STATES, IN HIS OFFICIAL CAPACITY.<br><br>      Defendant,<br><br>MICHELE LUNDGREN, MARIAN SHERIDAN, MESHAWN MADDOCK, MARI-ANN HENRY, AND AMY FACCHINELLO, IN THEIR OFFICIAL CAPACITY AS PRESIDENTIAL ELECTORS, REPRESENTING THEIR RESPECTIVE STATES.<br><br>       Intervenors. | Civil Action No.<br>6:20-cv-00660-JDK<br><br><br>**INTERVENORS' MICHELE LUNDGREN ET.AL.'S MOTION TO INTERVENE**<br><br><br>(Election Matter) |

**INTERVENORS' MICHELE LUNDGREN ET.AL.'S UNOPPOSED MOTION TO INTERVENE**

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| LOUIE GOHMERT, TYLER BOWYER, NANCY COTTLE, JAKE HOFFMAN, ANTHONY KERN, JAMES R. LAMON, SAM MOORHEAD, ROBERT MONTGOMERY, LORAINE PELLEGRINO, GREG SAFSTEN, KELLI WARD and MICHAEL WARD,<br><br>        Plaintiffs,<br><br>  v.<br><br>THE HONORABLE MICHAEL R. PENCE, VICE PRESIDENT OF THE UNITED STATES, IN HIS OFFICIAL CAPACITY.<br><br>        Defendant,<br><br>MICHELE LUNDGREN, MARIAN SHERIDAN, MESHAWN MADDOCK, MARI-ANN HENRY, AND AMY FACCHINELLO, IN THEIR OFFICIAL CAPACITY AS PRESIDENTIAL ELECTORS, REPRESENTING THEIR RESPECTIVE STATES.<br><br>        Intervenors. | Civil Action No.<br>6:20-cv-00660-JDK<br><br><br>**INTERVENORS' MICHELE LUNDGREN ET.AL.'S COMPLAINT FOR EXPEDITED DECLARATORY AND EMERGENCY INJUNCTIVE RELIEF**<br><br><br>(Election Matter) |

## INTERVENORS' MICHELE LUNDGREN ET.AL.'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Michele Lundgren, Marian Sheridan, Meshawn Maddock

Mari-Ann Henry and Amy Facchinello in their official capacities as Presidential Electors for the State of Michigan (hereinafter referred to as the "Michigan Electors") complain of the Honorable Michael R. Pence, Vice President of the United States, in his official capacity, and say:

## NATURE OF THE ACTION

1.     This civil action seeks an expedited declaratory judgment finding that the elector dispute resolution provisions in Section 15 of the Electoral Count Act, 3 U.S.C. §§ 5 and 15, are unconstitutional because these provisions violate the Electors Clause and the Twelfth Amendment of the U.S. Constitution. U.S. CONST. art. II, § 1, cl. 1 & Amend. XII.   Intervenors also request emergency injunctive relief required to effectuate the requested declaratory judgment.

2.     These provisions of Section 15 of the Electoral Count Act are unconstitutional insofar as they establish procedures for determining which of two or more competing slates of Presidential Electors for a given State are to be counted in the Electoral College, or how objections to a proffered slate are adjudicated, that violate the Twelfth Amendment.  This violation occurs because the Electoral Count Act directs the Defendant, Vice President Michael R. Pence, in his capacity as President of the Senate and Presiding Officer over the January 6, 2021 Joint Session

of Congress: (1) to count the electoral votes for a State that have been appointed in violation of the Electors Clause; (2) limits or eliminates his exclusive authority and sole discretion under the Twelfth Amendment to determine which slates of electors for a State, or neither, may be counted; and (3) replaces the Twelfth Amendment's dispute resolution procedure – under which the House of Representatives has sole authority to choose the President.

3. Section 15 of the Electoral Count Act unconstitutionally violates the Electors Clause by usurping the exclusive and plenary authority of State Legislatures to determine the manner of appointing Presidential Electors, and instead gives that authority to the State's Executive. Similarly, 3 USC § 5 makes clear that the Presidential electors of a state and their appointment by the State Executive shall be conclusive.

4. This is not an abstract or hypothetical question, but a live "case or controversy" under Article III that is ripe for a declaratory judgment arising from the events of December 14, 2020, where the States of Arizona, Michigan, Georgia, Pennsylvania, Wisconsin (and several others) have appointed two competing slates of Presidential electors to represent their respective States.

5. The Michigan Intervenors include portions of the slate of Republican Presidential Electors for the State of Michigan. The Michigan Intervenors have cast their Presidential electoral votes for the State of Michigan for President Donald J.

Trump and Vice-President Michael R. Pence on December 14, 2020, at the Michigan State Capitol with the permission and endorsement of the Michigan Legislature, *i.e.*, at the time, place, and manner required under Michigan state law and the Electoral Count Act. At the same time, Michigan's Governor and Secretary of State appointed a separate and competing slate of electors who cast Michigan's electoral votes for former Vice-President Joseph R. Biden, despite the evidence of massive multi-state electoral fraud committed on Biden's behalf that changed electoral results in Michigan, Arizona, Georgia, Pennsylvania, Wisconsin and other states that have also put forward competing slates of Presidential Electors (collectively, the "Contested States"). Collectively, these Contested States have enough electoral votes in controversy to determine the outcome of the 2020 United States Presidential General Election.

6. On January 6, 2021, when Congress convenes to count the electoral votes for President and Vice-President, it is believed that Plaintiff United States House Representative Gohmert will object to the counting of the slate of electors voting for Biden and to the Biden slates from the Contested States. Rep. Gohmert is entitled to have his objection determined under the Twelve Amendment, and not through the unconstitutional impositions of a prior Congress by 3 U.S.C. §§ 5 and 15.

7.     United States Senators have also stated that they may object to the Biden slate of electors from the Contested States.[1] United States Senators that object to the counting of the slate of electors voting for Biden and to the Biden slates from the Contested States are entitled to have their objection determined under the Twelve Amendment, and not through the unconstitutional impositions of a prior Congress by 3 U.S.C. §§ 5 and 15.

8.     This Intervenor Complaint addresses a matter of urgent national concern that involves only issues of law – namely, a determination that Sections 5 and 15 of the Electoral Count Act violate the Electors Clause and/or the Twelfth Amendment of the U.S. Constitution.   The relevant facts are not in dispute concerning the existence of a live case or controversy between Plaintiffs and Intervenors and Defendant, ripeness, standing, and other matters related to the justiciability of Intervenors' claims.[2]

---

[1] *See* https://www.forbes.com/sites/jackbrewster/2020/12/17/here-are-the-gop-senators-who have-hinted-at-defying-mcconnell-by-challenging-election/?sh=506395c34ce3.

[2] The facts relevant to the justiciability of Intervenors' claims are laid out below and demonstrate the certainty or near certainty that the unconstitutional provisions in Section 15 of the Electoral Count Act will be invoked at the January 6, 2021 Joint Session of Congress to choose the next President, namely: (1) there are competing slates of electors for Michigan and the other Contested States that have been or will be submitted to the Electoral College; (2) the Contested States collectively have sufficient (contested) electoral votes to determine the winner of the 2020 General Election – President Trump or former Vice President Biden; (3) legislators in Michigan and other Contested States have contested the certification of their State's electoral votes by State executives, due to substantial evidence of election fraud that is the subject of ongoing litigation and investigations; and (4) Senators and Members of the House of Representatives have expressed their intent to challenge the electors and electoral votes certified by State executives in the Contested States.

9.     Because the requested declaratory judgment will terminate the controversy arising from the conflict between the Twelfth Amendment and the Electoral Count Act, and the facts are not in dispute, it is appropriate for this Court to grant this relief in a summary proceeding without an evidentiary hearing or discovery.  *See* Notes of Advisory Committee on Federal Rules of Civil Procedure, Fed. R. Civ. P. 57.

10.     Accordingly, Intervenors join Plaintiffs' motion for a speedy summary proceeding under Rule 57 of the Federal Rules of Civil Procedure ("FRCP") to grant the relief requested herein as soon as possible, and for emergency injunctive relief under Rule 65 thereof consistent with the declaratory judgment requested herein on that same date.

11.     Accordingly, Intervenors respectfully request this Court to issue a declaratory judgment finding that:

  A. Sections 5 and 15 of the Electoral Count Act, 3 U.S.C. §§ 5 and 15, are unconstitutional because they violate the Twelfth Amendment, U.S. CONST. art. II, § 1, cl. 1 & amend. XII on the face of it; and further violate the Electors Clause;

  B. That Vice-President Pence, in his capacity as President of Senate and Presiding Officer of the January 6, 2021 Joint Session of Congress under the Twelfth Amendment, is subject solely to the requirements of

the Twelfth Amendment and may exercise the exclusive authority and sole discretion in determining which electoral votes to count for a given State, and must ignore and may not rely on any provisions of the Electoral Count Act that would limit his exclusive authority and his sole discretion to determine the count, which could include votes from the slates of Republican electors from the Contested States;

C. That, with respect to competing slates of electors from the Contested States, the Twelfth Amendment contains the exclusive dispute resolution mechanisms, namely, that (i) Vice-President Pence determines which slate of electors' votes count, or neither, for that State; (ii) how objections from members of Congress to any proffered slate of electors is adjudicated; and (iii) if no candidate has a majority of 270 elector votes, then the House of Representatives (and only the House of Representatives) shall choose the President where "the votes [in the House of Representatives] shall be taken by states, the representation from each state having one vote," U.S. CONST. amend. XII;

D. That with respect to the counting of competing slates of electors, the alternative dispute resolution procedure or priority rule in 3 U.S.C. § 15, together with its incorporation of 3 U.S.C. § 5, shall have no force

or effect because it nullifies and replaces the Twelfth Amendment rules above with an entirely different procedure; and

E. Issue any other declaratory judgments or findings or injunctive relief necessary to support or effectuate the foregoing declaratory judgments.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

13.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1343 because this action involves a federal election for President of the United States. "A significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question." *Bush v. Gore*, 531 U.S. 98, 113 (2000) (Rehnquist, C.J., concurring); *Smiley v. Holm*, 285 U.S. 355, 365 (1932).

14.     The jurisdiction of the Court to grant declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202 and by Rule 57, Fed. R. Civ. P., and emergency injunctive relief by Rule 65, Fed. R. Civ. P.

15.     Venue is proper because Plaintiff Gohmert resides in Tyler, Texas, he maintains his primary congressional office in Tyler, and no real property is involved in the action. 28 U.S.C. § 1391(e)(1).

## THE PARTIES

16.     Plaintiff Louie Gohmert is a duly elected member of the United States House of Representatives for the First Congressional District of Texas.   On November 3, 2020 he won re-election of this Congressional seat and plans to attend the January 6, 2021 session of Congress.  He resides in the City of Tyler, in Smith County, Texas.

17.     Each of the following Plaintiffs is a resident of Arizona, a registered Arizona voter and a Republican Party Presidential Elector on behalf of the State of Arizona, who voted their competing slate for President and Vice President on December 14, 2020 for Donald J. Trump and Michael R. Pence: a) Tyler Bowyer, a resident of Maricopa County and a Republican National Committeeman; b) Nancy Cottle, a resident of Maricopa County and Second Vice-Chairman of the Maricopa County Republican Committee; c) Jake Hoffman, a resident of Maricopa County and member-elect of the Arizona House of Representatives; d) Anthony Kern, a resident of Maricopa County and an outgoing member of the Arizona House of Representatives; e) James R. Lamon, a resident of Maricopa County; f) Samuel Moorhead, a resident of Gila County; g) Robert Montgomery, a resident of Cochise County and Republican Party Chairman for Cochise County; h) Loraine Pellegrino, a resident of Maricopa County; i) Greg Safsten, a resident of Maricopa County and Executive Director of the Republican Party of Arizona; j) Kelli Ward, a resident of

Mohave County and Chair of the Arizona Republican Party; and k) Michael Ward, a resident of Mohave County.

18.     The above eleven Intervenors constitute the full slate of the Arizona Republican party's nominees for presidential electors (the "Arizona Electors").

19.     The Michigan Intervenors are residents of Michigan, registered Michigan voters and Republican Party Presidential Electors on behalf of the State of Michigan, who voted their competing slate for President and Vice President on December 14, 2020 for Donald J. Trump and Michael R. Pence.

20.     The Defendant is Vice President Michael R. Pence named in his official capacity as the Vice President of the United States.  The declaratory and injunctive relief requested herein applies to his duties as President of the Senate and Presiding Officer at the January 6, 2021 Joint Session of Congress carried out pursuant to the Electoral Count Act and the Twelfth Amendment.

## STATEMENT OF FACTS

21.     The Plaintiffs include a United States Representative from Texas, the entire slate of Republican Presidential Electors for the State of Arizona as well as an outgoing and incoming member of the Arizona Legislature.  On December 14, 2020, pursuant to the requirements of applicable state laws and the Electoral Count Act, the Arizona Electors, with the knowledge and permission of the Republican-majority Arizona Legislature, convened at the Arizona State Capitol, and cast Arizona's

electoral votes for President Donald J. Trump and Vice President Michael R. Pence.[3] On the same date, the Republican Presidential Electors for the States of Georgia,[4] Pennsylvania[5] and Wisconsin[6] met at their respective State Capitols to cast their States' electoral votes for President Trump and Vice President Pence.

22.    The Michigan Intervenors include the Republican Presidential Electors for the State of Michigan.  On December 14, 2020, pursuant to the requirements of applicable state laws and the Electoral Count Act, the Michigan Intervenors, with the knowledge and permission of the Republican-majority Michigan Legislature, convened at the Michigan State Capitol, and cast Michigan's electoral votes for President Donald J. Trump and Vice President Michael R. Pence. Michigan's Republican electors attempted to vote indoors at their State Capitol on December 14th but were unlawfully denied entrance to the Michigan State Capital by the Michigan State Police.  Instead, they met on the grounds of the Michigan State

---

[3] *See GOP Elector Nominees cast votes for Trump in Arizona, Georgia, Pennsylvania*, by Dave Boyer, The Washington Times, December 14, 2020. https://www.washingtontimes.com/news/2020/dec/14/gop-electors-cast-votes-trump-georgia-pennsylvania/.

[4] *See id.*

[5] *See id.*

[6] *See Wisconsin GOP Electors Meet to Cast their own Votes Too Just in Case,* by Nick Viviani, WMTV, NBC15.com, December 14, 2020, https://www.nbc15.com/2020/12/14/wisconsin-gop-electors-meet-to-cast-their-own-votes-too-just-in-case/ last visited December 14, 2020.

Capitol and cast their votes for Donald J. Trump as President and Michael R. Pence as Vice President.[7]

23.    On December 14, 2020, in Arizona and the other States listed above, the Democratic Party's slate of electors convened in their respective State Capitols to cast their electoral votes for former Vice President Joseph R. Biden as President and Senator Kamala Harris as Vice President.  On the same day, Arizona Governor Doug Ducey and Arizona Secretary of State Katie Hobbs submitted the Certificate of Ascertainment with the Biden electoral votes pursuant to the National Archivist pursuant to the Electoral Count Act.[8]

24.    Accordingly, there are now competing slates of Republican and Democratic electors in five States with Republican majorities in both houses of their State Legislatures – Arizona, Georgia, Michigan, Pennsylvania, and Wisconsin (*i.e.*, the Contested States) – that collectively have 73 electoral votes, which are more than sufficient to determine the winner of the 2020 General Election.[9]

---

[7] *See Michigan Police Block GOP Electors from Entering Capitol*, by Jacob Palmieri, the Palmieri Report, December 14, 2020, https://thepalmierireport.com/michigan-state-police-block-gop-electors-from-entering-capitol/.

[8] *See Democratic Electors Cast Ballots in Arizona for First Time Since 1996*, by Nicole Valdes, ABC15.com, December 14, 2020, *available at*: https://www.abc15.com/news/election-2020/democratic-electors-cast-ballots-in-arizona-for-first-time-since-1996.

[9] Republican Presidential Electors in the States of Nevada and New Mexico, which have Democrat majority state legislature, also met on December 14, 2020, at their State Capitols to cast their votes for President Trump and Vice President Pence.

25.     The Arizona Electors, along with Republican Presidential Electors in Georgia, Michigan, Pennsylvania, and Wisconsin, took this step as a result of the extraordinary events and substantial evidence of election fraud and other clearly unlawful and illegal conduct before, during and after the 2020 General Election in these States.  The Arizona Legislature has conducted legislative hearings into these voting fraud allegations, and is actively investigating these matters, including issuing subpoenas of Maricopa County, Arizona (which accounts for over 60% of Arizona's population and voters) voting machines for forensic audits.[10]

26.     On December 14, 2020, members of the Arizona Legislature passed a Joint Resolution in which they: (1) found that the 2020 General Election "was marred by irregularities so significant as to render it highly doubtful whether the certified result accurately represents the will of the voters;" (2) invoked the Arizona Legislature's authority under the Electors Clause and 5 U.S.C. § 2 to declare the 2020 General Election a failed election and to directly appoint Arizona's electors; (3) resolved that the Plaintiff Arizona Electors' "11 electoral votes be accepted for … Donald J. Trump or to have all electoral votes nullified completely until a full forensic audit can be conducted;" and (4) further resolved "that the United States

---

[10] Maricopa County election officials have refused to comply with these subpoenas or to turn over voting machines or voting records and have sued to quash the subpoena.  Plaintiff Arizona Electors have moved to intervene in this Arizona state proceeding.  *See generally Maricopa Cty. v. Fann*, Case No. CV2020-016840 (Az. Sup. Ct. Dec. 18, 2020).

Congress is not to consider a slate of electors from the State of Arizona until the Legislature deems the election to be final and all irregularities resolved."[11]

27.     Public reports have also highlighted wide-spread election fraud in the other Contested States that prompted competing Electors' slates. [12]

28.     Republican Senators and Republican Members of the House of Representatives have also expressed their intent to oppose the certified slates of electors from the Contested States due to the substantial evidence of election fraud in the 2020 General Election.  Multiple Senators and House Members have stated that they will object to the Biden electors at the January 6, 2021 Joint Session of Congress.[13]  Plaintiff Gohmert will object to the counting of the Arizona electors voting for Biden, as well as to the Biden electors from the remaining Contested States.

29.     Also, the Legislatures of, *inter alia*, Michigan, Georgia, Pennsylvania and Wisconsin have conducted extensive hearings and received substantial evidence

---

[11] *See* **Ex. A**, "A Joint Resolution of the 54th Legislature, State of Arizona, To The 116th Congress, Office of the President of the Senate Presiding," December 14, 2020 ("December 14, 2020 Joint Resolution").

[12] *See The Immaculate Deception*, *Six Key Dimensions of Election Irregularities, The Navarro Report*. https://bannonswarroom.com/wp-content/uploads/2020/12/The-Immaculate-Deception-12.15.20-1.pdf

[13] *See, e.g., Dueling Electors and the Upcoming Joint Session of Congress*, by Zachary Steiber, Epoch Times, Dec. 17, 2020, *available at:* https://www.theepochtimes.com/explainer-dueling-electors-and-the-upcoming-joint-session-of-congress_3622992.html.

of clearly unlawful voter fraud, election irregularities and counterfeit ballots cast and counted for Joe Biden.

30.     Based on the foregoing facts, Defendant Vice President Pence, in his capacity as President of the Senate and Presiding Officer at the January 6, 2021 Joint Session of Congress to select the next President, will be presented with the following circumstances: (1) competing slates of electors from the State of Arizona and the other Contested States (namely, Georgia, Michigan, Pennsylvania, and Wisconsin) (2) that represent sufficient electoral votes (a) if counted, to determine the winner of the 2020 General Election, or (b) if not counted, to deny either President Trump or former Vice President Biden sufficient votes to win outright; and (3) objections from at least one Senator and at least one Member of the House of Representatives to the counting of electoral votes from one or more of the Contested States.

31.     The choice between the Twelfth Amendment and 3 U.S.C. § 15 raises important procedural differences.  In the incoming 117th Congress, the Republican Party has a majority in 27 of the House delegations that would vote under the Twelfth Amendment.  The Democrat Party has a majority in 20 of those House delegations, and the two parties are evenly divided in three of those delegations.  By contrast, under 3 U.S.C. § 15, Democrats have a ten- or eleven-seat majority in the House, depending on the final outcome of the election in New York's 22nd District.

32.    Accordingly, it is the foregoing conflict between the Twelfth Amendment of the U.S. Constitution and Section 15 of the Electoral Count Act that establish the urgency for this Court to issue a declaratory judgment that Section 15 of the Electoral Count Act is unconstitutional.

## RELEVANT CONSTITUTIONAL AND STATUTORY PROVISIONS

33.    **Presidential Electors Clause.**  The U.S. Constitution grants State Legislatures the exclusive authority to appoint Presidential Electors:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a number of electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.  U.S. CONST. art. II, § 1 ("Electors Clause").

34.    The Supreme Court has affirmed that the "power and jurisdiction of the state [legislature]" to select electors "is exclusive," *McPherson v. Blacker*, 146 U.S. 1, 11 (1892); this power "cannot be taken from them or modified" by statute or even the state constitution," and "there is no doubt of the right of the legislature to resume the power at any time."  *Id.* at 10 (citations omitted).  In *Bush v. Gore*, 531 U.S. 98 (2000), the Supreme Court reaffirmed *McPherson's* holding that "the state legislature's power to select the manner for appointing electors is plenary," *Bush*, 531 U.S. at 104 (*citing McPherson*, 146 U.S. at 35), noting that the state legislature "may, if it so chooses, select the electors itself," and that even after deciding to select

electors through a statewide election, "can take back the power to appoint electors." *Id.* (citation omitted).

35. **The Twelfth Amendment.** The Twelfth Amendment sets forth the procedures for counting electoral votes and for resolving disputes over whether and which electoral votes may be counted for a State. The first section describes the meeting of the Electoral College and the procedures up to the casting of the electoral votes by the Presidential Electors in their respective states, which occurred on December 14, 2020, with respect to the 2020 General Election:

> The electors shall meet in their respective states and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate.

U.S. CONST. amend. XII.

36. The second section describes how Defendant Vice President Pence, in his role as President of the Senate and Presiding Officer for the January 6, 2021 Joint Session of Congress, shall "count" the electoral votes.

> The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted[.]

U.S. CONST. amend. XII.

37.    Under the Twelfth Amendment, Defendant Pence alone has the exclusive authority and sole discretion to open and permit the counting of the electoral votes for a given state, and where there are competing slates of electors, or where there is objection to any single slate of electors, to determine which electors' votes, or whether none, shall be counted.  Notably, neither the Twelfth Amendment nor the Electoral Count Act, provides any mechanism for judicial review of the Presiding Officer's determinations.[14]  Instead, the Twelfth Amendment and the Electoral Count Act adopt different procedures for the President of the Senate (Twelfth Amendment) or both Houses of Congress (Electoral Count Act) to resolve any such disputes and the authority for the final determinations, in the event of disagreement, to different parties; namely, the Electoral Count Act gives it to the Executive of the State; while the Twelfth Amendment vests sole authority with the Vice President.

38.    The third section of the Twelfth Amendment sets forth the procedures for selecting the President (solely) by the House of Representatives, in the event that

---

[14] *See, e.g.,* Nathan L. Colvin & Edward B. Foley, *The Twelfth Amendment: A Constitutional Ticking Time Bomb*, U. of Miami L. Rev. 64:475, 526 (2010) (discussing reviews of the Electoral Count Act's ("ECA") legislative history and concluding that, "[o]ne of the more thorough reviews of the legislative history of the ECA reveals that Congress considered giving the Court some role in the process but rejected the idea every time, and it was clear that Congress did not think the Court had a constitutional role nor did it believe that the Court should have any jurisdiction at all." Plaintiffs agree that resolution of disputes before Congress, arising on January 6, 2021, over competing slates of electors, or objections to any slate of electors, are matters outside the purview of federal courts; but the federal courts must determine whether the ECA is unconstitutional.  This position is fully consistent with the declaratory judgment requested herein.

no candidate has received a majority of electoral votes counted by the President of the Senate.

> The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of electors appointed; *and if no person have such majority, then* from the persons having the highest numbers not exceeding three on the list of those voted for as President**, *the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote*; a quorum for this purpose shall consist of a member or members from two-thirds of the states, *and a majority of all the states shall be necessary to a choice*.  And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them, before the fourth day of March next following, then the Vice-President shall act as President, as in the case of the death or other constitutional disability of the President.

U.S. CONST. amend. XII (emphasis added).

39.    There are four key features of this Twelfth Amendment procedure that should be noted when comparing it with the Electoral Count Act's procedures: (1) the President is to be chosen solely by the House of Representatives, with no role for the Senate; (2) votes are taken by State (with one vote per State), rather than by individual House members; (3) the President is deemed the candidate that receives the majority of States' votes, rather than a majority of individual House members' votes; and (4) there are no other restrictions on this majority rule provision; in particular, no "tie breaker" or priority rules based on the manner or State authority that originally appointed the electors on December 14, 2020 as is the case under the

Electoral Count Act (which gives priority to electors' certified by the State's executive).

40.    **The Electoral Count Act.**    The Electoral Count Act of 1887, as subsequently amended, includes a number of provisions that are in direct conflict with the text of the Electors Clause and the Twelfth Amendment.

41.    Sections 5 and 15 of the Electoral Count Act adopt an entirely different set of procedures for the counting of electoral votes, for addressing situations where one candidate does not receive a majority, and for resolving disputes.  Sections 16 to 18 of the Electoral Count Act provide additional procedural rules governing the Joint Session of Congress (to be held January 6, 2021 for the 2020 General Election).

42.    The first part of Section 15 is consistent with the Twelfth Amendment insofar as it provides that "the President of the Senate shall be their presiding officer" and that "all the certificates and papers purporting to be certificates of the electoral votes" are to be "opened by the President of the Senate." 3 U.S.C. § 15.  However, Section 15 diverges from the Twelfth Amendment by adopting procedures for the President of the Senate to "call for objections," and if there are objections made in writing by one Senator and one Member of the House of Representatives, then this shall trigger a dispute-resolution procedure found nowhere in the Twelfth Amendment.

43.     The Section 15's dispute resolution procedures are lengthy and reproduced in their entirety below:

> When all objections so made to any vote or paper from a State shall have been received and read, the Senate shall thereupon withdraw, and such objections shall be submitted to the Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision; and no electoral vote or votes from any State which shall have been regularly given by electors whose appointment has been lawfully certified to according to section 6 of this title [3 USCS § 6][15] from which but one return has been received shall be rejected, *but the two Houses concurrently may reject the vote or votes when they agree that such vote or votes have not been so regularly given by electors whose appointment has been so certified*.  If more than one return or paper purporting to be a return from a State shall have been received by the President of the Senate, those votes, and those only, shall be counted which shall have been regularly given by the electors who are shown by the determination mentioned in section 5 [3 USCS § 5] of this title to have been appointed, if the determination in said section provided for shall have been made, or by such successors or substitutes, in case of a vacancy in the board of electors so ascertained, as have been appointed to fill such vacancy in the mode provided by the laws of the State; but in case there shall arise the question which of two or more of such State authorities determining what electors have been appointed, as mentioned in section 5 of this title [3 USCS § 5], *is the lawful tribunal of such State, the votes regularly given of those electors, and those only*, of such State shall be counted whose title as electors the two Houses, acting separately, shall concurrently decide is supported by the decision of such State so authorized by its law; and in such case of more than one return or paper purporting to be a return from a State, if there

---

[15] 3 U.S.C. § 6 is inconsistent with the Electors Clause—which provides that electors "shall sign and certify, and transmit sealed to the seat of the government of the United States" the results of their vote, U.S. Const. art. II, § 1, cl. 2-3—because § 6 relies on state executives to forward the results of the electors' vote to the Archivist for delivery to Congress. 3 U.S.C. § 6. Although the means of delivery are arguably inconsequential, the Constitution vests state executives with no role whatsoever in the process of electing a President. A state executive lends no official imprimatur to a given slate of electors under the Constitution.

shall have been no such determination of the question in the State aforesaid, then those votes, and those only, shall be counted which the two Houses shall concurrently decide were cast by lawful electors appointed in accordance with the laws of the State, unless the two Houses, acting separately, shall concurrently decide such votes not to be the lawful votes of the legally appointed electors of such State. *But if the two Houses shall disagree in respect of the counting of such votes, then, and in that case, the votes of the electors whose appointment shall have been certified by the executive of the State, under the seal thereof, shall be counted.* When the two Houses have voted, they shall immediately again meet, and the presiding officer shall then announce the decision of the questions submitted. No votes or papers from any other State shall be acted upon until the objections previously made to the votes or papers from any State shall have been finally disposed of.

3 U.S.C. § 15 (emphasis added).

44.     First, the Electoral Count Act submits disputes over the "count" of electoral votes to both the House of Representatives and to the Senate. The Twelfth Amendment envisages no such role for both Houses of Congress. The President of the Senate, and the President of the Senate alone, shall "count" the electoral votes. This intent is borne out by a unanimous resolution attached to the final Constitution that described the procedures for electing the first President (*i.e.*, for a time when there would not already be a Vice President), stating in relevant part "that the Senators should appoint a President of the Senate, for the sole Purpose of receiving, opening and counting the Votes for President." 2 M. Farrand, RECORDS OF THE FEDERAL CONVENTION OF 1787, at 666 (1911). For all subsequent elections, when there would be a Vice President to act as President of the Senate, the Constitution vests the opening and counting in the Vice President.

45.     Second, the Electoral Count Act gives both the House of Representatives and the Senate the power to vote, or "decide," which of two or more competing slates of electors shall be counted, and it requires the concurrence of both to "count" the electoral votes for one of the competing slates of electors.

46.     Under the Twelfth Amendment, the President of the Senate has the sole authority to count votes in the first instance, and then the House may do so *only* in the event that no candidate receives a majority counted by the President of the Senate.  There is no role for the Senate to participate in choosing the President.

47.     Third, the Electoral Count Act eliminates entirely the unique mechanism by which the House of Representatives under the Twelve Amendment is to choose the President, namely, where "the votes shall be taken by states, the representation for each state having one vote." U.S. CONST. amend. XII.  The Electoral Count Act is silent on how the House of Representatives is to "decide" which electoral votes were cast by lawful electors.

48.     Fourth, the Electoral Count Act adopts a priority rule, or "tie breaker," "if the two Houses shall disagree in respect of counting of such votes," in which case "the votes of the electors whose appointment shall have been certified by the executive of the State … shall be counted."  This provision not only conflicts with the President of the Senate's exclusive authority and sole discretion under the Twelfth Amendment to decide which electoral votes to count, but also with the State

Legislature's exclusive and plenary authority under the Electors Clause to appoint the Presidential Electors for their State.

49.    The Electoral Count Act is unconstitutional because it exceeds the power of Congress to enact. It is well settled that "one legislature may not bind the legislative authority of its successors," United *States v. Winstar Corp.*, 518 U.S. 839, 872 (1996), which is a foundational and "centuries-old concept," *id.*, that traces to Blackstone's maxim that "Acts of parliament derogatory from the power of subsequent parliaments bind not." *Id.* (quoting 1 WILLIAM BLACKSTONE, COMMENTARIES *90). "There is no constitutionally prescribed method by which one Congress may require a future Congress to interpret or discharge a constitutional responsibility in any particular way." Laurence H. Tribe, *Erog v. Hsub and Its Disguises: Freeing* Bush v. Gore *from Its Hall of Mirrors*, 115 HARV. L. REV. 170, 267 n.388 (2001).

50.    The Electoral Count Act also violates the Presentment Clause by purporting to create a type of bicameral order, resolution, or vote that is not presented to the President. *See* U.S. CONST. art. I, § 7, cl. 3 ("Every Order, Resolution, or Vote, to Which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and

House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill.")

51.     The House and Senate cannot resolve the issues that the Electoral Count Act asks them to resolve without either a supermajority in both houses or presentment.  The Electoral Count Act similarly restricts the authority of the House of Representatives and the Senate to control their internal discretion and procedures pursuant to Article I, Section 5 which provides that "[e]ach House may determine the Rules of its Proceedings …" U.S. CONST. art. I, § 5, cl. 2.

52.     Further, the Electoral Count Act improperly delegates tie-breaking authority to State executives (who have no agency under the Electors Clause or election amendments) when a State presents competing slates that Congress cannot resolve, or when an objection is presented to a particular slate of electors.

53.     The Electoral Count Act also violates the non-delegation doctrine, the separation-of-powers and anti-entrenchment doctrines.  *See generally* Chris Land & David Schultz, *On the Unenforceability of the Electoral Count Act*, 13 Rutgers J.L. & Pub. Policy 340, 364-377 (2016).

## JUSTICIABILITY AND JURISDICTION

54.     **This Court Can Grant Declaratory Judgment in a Summary Proceeding.**  This Court has the authority to enter a declaratory judgment and to provide injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil

Procedure and 28 U.S.C. §§ 2201 and 2202. The court may order a speedy hearing of a declaratory judgment action. Fed. Rules Civ. Proc. R. 57, Advisory Committee Notes. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding. *Id.* Inasmuch as it often involves only an issue of law on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion. *Id.*

55. As described above, Intervenors' claims involve legal issues only – specifically, whether the Electoral Count Act violates the Twelfth Amendment of the U.S. Constitution – that do not require this court to resolve any disputed factual issues.

56. Moreover, the factual issues related to the justiciability of Intervenors' claims are not in dispute. To assist this Court to grant the relief on the expedited basis requested herein, Intervenors address a number of likely objections to this Court's jurisdiction and the justiciability of Intervenors' claims that may be raised by Defendant.

57. **Intervenors Have Standing.** The Michigan Intervenors have standing as Presidential Electors for the State of Michigan.

58. Prior to December 14, 2020, Plaintiff Arizona Electors had standing under the Electors Clause as candidates for the office of Presidential Elector because,

under Arizona law, a vote cast for the Republican Party's President and Vice President is cast for the Republican Presidential Electors. *See* ARS § 16-212. Similarly, Intervenors had standing under the Electors Clause as candidates for the office of Presidential Elector because, under their State's law, a vote cast for the Republican Party's President and Vice President is cast for the Republican Presidential Electors Accordingly, Plaintiff Arizona Electors and Intervenors, like other candidates for office, "have a cognizable interest in ensuring that the final vote tally reflects the legally valid votes cast," as "[a]n inaccurate vote tally is a concrete and particularized injury to candidates such as the Electors." *Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020) (affirming that Presidential Electors have Article III and prudential standing under Electors Clause). *See also Wood v. Raffensperger*, No. 20-14418, 2020 WL 7094866, *10 (11th Cir. Dec. 5, 2020) (affirming that if Plaintiff voter had been a candidate for office "he could assert a personal, distinct injury" required for standing); *Trump v. Wis. Elections Comm'n*, No. 20-cv-1785, 2020 U.S. Dist. LEXIS 233765 at *26 (E.D. Wis. Dec. 12, 2020) (President Trump, "as candidate for election, has a concrete particularized interest in the actual results of the election.").

59.     But for the alleged wrongful conduct of Arizona executive branch and Maricopa County officials under color of law, by certifying a fraudulently produced election result in Mr. Biden's favor, the Plaintiff Arizona Electors would have been

certified as the presidential electors for Arizona, and Arizona's Governor and Secretary of State would have transmitted uncontested votes for Donald J. Trump and Michael R. Pence to the Electoral College. The certification and transmission of a competing slate of Biden electors has resulted in a unique injury that only Plaintiff Arizona Electors could suffer, namely, having a competing slate of electors take their place and their votes in the Electoral College.

60. Likewise, but for the alleged wrongful conduct of the executive branches and the action of select County officials in their respective States under color of law, by certifying a fraudulently produced election result in Mr. Biden's favor, the Intervenors would have been certified as the Presidential Electors for their respective States, and their respective State's Governor and Secretary of State would have transmitted uncontested votes for Donald J. Trump and Michael R. Pence to the Electoral College. The certification and transmission of a competing slate of Biden electors has resulted in a unique injury that only Plaintiff Arizona Electors and Intervenors could suffer, namely, having a competing slate of electors take their place and their votes in the Electoral College.

61. The upcoming January 6, 2021 Joint Session of Congress provides further grounds of standing for the requested declaratory judgment that the Electoral Count Act is unconstitutional. Then, Intervenors are certain to suffer an injury-in-fact caused by Defendant Vice President Pence, acting as Presiding Officer, if

Defendant ignores the Twelfth Amendment and instead follows the procedures in Section 15 of the Electoral Count Act to resolve the dispute over which slate of Contested State electors is to be counted.

62.    The Twelfth Amendment gives Defendant exclusive authority and sole discretion as to which set of electors to count, or not to count any set of electors; if no candidate receives a majority of electoral votes, then the President is to be chosen by the House, where "the votes shall be taken by States, the representation from each state having one vote."  U.S. CONST. amend. XII.  If Defendant Pence instead follows the procedures in Section 15 of the Electoral Count Act, Intervenors' electoral votes will not be counted because (a) the Democratic majority House of Representatives will not "decide" to count the electoral votes of Intervenor Republican electors; and (b) either the Senate will concur with the House not to count their votes, or the Senate will not concur, in which case, the electoral votes cast by Biden's electors will be counted because the Biden slate of electors was certified by Intervenors' respective State's executives.

63.    It is sufficient for the purposes of declaratory judgment that the injury is threatened. The declaratory and injunctive relief requested by Intervenors "may be made before actual completion of the injury-in-fact required for Article III standing," namely, the application of Section 15 of the Electoral Count Act, rather than the Twelfth Amendment to resolve disputes over which of two competing slates

of electors to count "if the plaintiff can show an actual present harm or significant possibility of future harm to demonstrate the need for pre-enforcement review." 10 FED. PROC. L. ED. § 23.26 ("Standing to Seek Declaratory Judgment") (citations omitted).

64.     Intervenors have demonstrated above that this injury-in-fact is to occur at the January 6, 2021 Joint Session of Congress, and they seek the requested declaratory and injunctive relief "only in the last resort, and as a necessity in the determination of a vital controversy." *Id.*

65.     **Intervenors Present a Live "Case or Controversy."** Intervenors' claims present a live "case or controversy" with the Defendant, rather than hypothetical or abstract dispute, that can be litigated and decided by this Court through the requested declaratory and injunctive relief. Here there is a clear threat of the application of an unconstitutional statute, Section 15 of the Electoral Count Act, which is sufficient to establish the requisite case or controversy. *See, e.g., Navegar, Inc. v. U.S.*, 103 F.3d 994, 998 (D.C. Cir. 1997) ("the threat of prosecution provides the foundation of justiciability as a constitutional and prudential matter, and the Declaratory Judgments Act provides the mechanism for seeking pre-enforcement review in federal court.").

66.     First, the events of December 14, 2020, gave rise to two competing slates of electors for the State of Arizona and the other Contested States: the Plaintiff

Arizona Electors, supported by Arizona State legislators (as evidenced by the December 14, 2020 Joint Resolution and the participation of Arizona legislator Intervenors), who cast their electoral votes for President Trump and Vice President Pence, and one certified by the Arizona state executives who cast their votes for former Vice President Biden and Senator Harris. Second, the text of the Twelfth Amendment of the Constitution expressly commits to the Defendant Vice President Pence, acting as the President of the Senate and Presiding Officer for the January 6, 2021 Joint Session of Congress, the authority and discretion to "count" electoral votes, *i.e.*, deciding in his sole discretion as to which one of the two, or neither, set of electoral votes shall be counted. The Electoral Count Act similarly designates Defendant as the Presiding Officer responsible for opening and counting electoral votes, but sets forth a different set of procedures, inconsistent with the Twelfth Amendment, for deciding which of two or more competing slates of electors and electoral votes, or neither, shall be counted.

67. Accordingly, a controversy presently exists due to: (1) the existence of competing slates of electors for Arizona and the other Contested States, and (2) distinct and inconsistent procedures under the Twelfth Amendment and the Electoral Count Act to determine which slate of electors and their electoral votes, or neither, shall be counted in choosing the next President. Further, this controversy must be resolved at the January 6, 2021 Joint Session of Congress. Finally, the Constitution

expressly designates Defendant Pence as the individual who decides which set of electoral votes, or neither, to count, and the requested declaratory judgment that the procedures under Electoral Count Act are unconstitutional is necessary to ensure that Defendant Pence counts electoral votes in a manner consistent with the Twelfth Amendment of the U.S. Constitution.

68.     The injuries that Intervenors assert affect the procedure by which the status of their votes will be considered, which lowers the thresholds for immediacy and redressability under this Circuit's and the Supreme Court's precedents. *Nat'l Treasury Employees Union v. U.S.,* 101 F.3d 1423, 1428-29 (D.C. Cir. 1996); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 571-72 & n.7 (1992). Similarly, a plaintiff with concrete injury can invoke Constitution's structural protections of liberty. *Bond v. United States*, 564 U.S. 211, 222-23 (2011).

69.     **Intervenors' Claims Are Ripe for Adjudication.** Intervenors' claims are ripe for the same reasons that they present a live "case or controversy" within the meaning of Article III. "[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Roark v. Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.12 (5th Cir. 2008) (*quoting* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.4.18 (5th Ed. 2007)). As explained above, the facts underlying the justiciability of Intervenors' claims are not

in dispute. Further, it is certain or nearly certain that Intervenors will suffer an injury-in-fact at the January 6, 2021 Joint Session of Congress, if Defendant Pence disregards the exclusive authority and sole discretion granted to him under the Twelfth Amendment to "count" electoral votes, and instead follows the conflicting and unconstitutional procedures in Section 15 of the Electoral Count Act, pursuant to which Intervenors' electoral votes will be disregarded in favor of the competing electors for the State of Arizona.

70. **Intervenors' Claims Are Not Moot.** Intervenors seek prospective declaratory judgment that portions of the Electoral Count Act are unconstitutional and injunctive relief prohibiting Defendant from following the procedures in Section 15 thereof that authorize the House and Senate jointly to resolve disputes regarding competing slates of electors. This prospective relief would apply to Defendants' future actions at the January 6, 2021 Joint Session of Congress. The requested relief thus is not moot because it is prospective and because it addresses an unconstitutional "ongoing policy" embodied in the Electoral Count Act that is likely to be repeated and will evade review if the requested relief is not granted. *Del Monte Fresh Produce v. U.S.*, 570 F.3d 316, 321-22 (D.C. Cir. 2009).

## COUNT I

## DEFENDANT WILL NECESSARILY VIOLATE THE TWELFTH AMENDMENT AND THE ELECTORS CLAUSE OF THE UNITED STATES CONSTITUTION IF HE FOLLOWS THE ELECTORAL COUNT ACT.

71. Intervenors reallege all preceding paragraphs as if fully set forth herein.

72. The Electors Clause states that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors" for President and Vice President. U.S. Const. art. II, §1, cl. 2 (emphasis added).

73. The Twelfth Amendment of the U.S. Constitution gives Defendant Vice President, as President of the Senate and the Presiding Officer of January 6, 2021 Joint Session of Congress, the exclusive authority and sole discretion to "count" the electoral votes for President, as well as the authority to determine which of two or more competing slates of electors for a State, or neither, may be counted, or how objections to any single slate of electors is resolved. In the event no candidate receives a majority of the electoral votes, then the House of Representatives shall have sole authority to choose the President where "the votes shall be taken by states, the representation from each state having one vote." U.S. CONST. amend. XII.

74. Section 15 of the Electoral Count Act replaces the procedures set forth in the Twelfth Amendment with a different and inconsistent set of decision making and dispute resolution procedures. As detailed above, these provisions of Section

15 of the Electoral Count Act are unconstitutional insofar as they require Defendant: (1) to count the electoral votes for a State that have been appointed in violation of the Electors Clause; (2) limits or eliminates his exclusive authority and sole discretion under the Twelfth Amendment to determine which slates of electors for a State, or neither, may be counted; and (3) replaces the Twelfth Amendment's dispute resolution procedure which provides for the House of Representatives to choose the President under a procedure where "the votes shall be taken by states, the representation from each state having one vote" – with an entirely different procedure in which the House and Senate each separately "decide" which slate is to be counted, and in the event of a disagreement, then only "the votes of the electors whose appointment shall have been certified by the executive of the State … shall be counted." 3 U.S.C. § 15.

75. Section 15 of the Electoral Count Act also violates the Electors Clause by usurping the exclusive and plenary authority of State Legislatures to determine the manner of appointing Presidential Electors and gives that authority instead to the State's Executive.

76. Intervenors incorporate into their Complaint the claims, facts, allegations and causes of action complained about and as contained in Plaintiffs' Original Complaint filed herein.

**PRAYER FOR RELIEF**

77.     Accordingly, Intervenors respectfully request that this Court issue a judgment that:

A. Declares that Section 15 of the Electoral Count Act, 3 U.S.C. §§5 and 15, is unconstitutional because it violates the Twelfth Amendment on its face, Amend. XII, Constitution;

B. Declares that Section 15 of the Electoral Count Act, 3 U.S.C. §§5 and 15, is unconstitutional because it violates the Electors Clause. U.S. CONST. art. II, § 1, cl. 1;

C. Declares that Vice-President Pence, in his capacity as President of Senate and Presiding Officer of the January 6, 2021 Joint Session of Congress, is subject solely to the requirements of the Twelfth Amendment and may exercise the exclusive authority and sole discretion in determining which electoral votes to count for a given State;

D. Enjoins reliance on any provisions of the Electoral Count Act that would limit Defendant's exclusive authority and his sole discretion to determine which of two or more competing slates of electors' votes are to be counted for President;

E. Declares that, with respect to competing slates of electors from the State of Arizona or other Contested States, or with respect to objection to any single slate of electors, the Twelfth Amendment contains the exclusive dispute resolution mechanisms, namely, that (i) Vice-President Pence determines which slate of electors' votes shall be counted, or if none be counted, for that State and (ii) if no person has a majority, then the House of Representatives (and only the House of Representatives) shall choose the President where "the votes [in the House of Representatives] shall be taken by states, the representation from each state having one vote," U.S. CONST. amend. XII;

F. Declares that, also with respect to competing slates of electors, the alternative dispute resolution procedure or priority rule in 3 U.S.C. § 15, is null and void insofar as it contradicts and replaces the Twelfth Amendment rules above by with an entirely different procedure in which the House and Senate each separately "decide" which slate is to be counted, and in the event of a disagreement, then only "the votes of the electors  whose appointment shall have been certified by the executive of the State … shall be counted,"  3 U.S.C. § 15;

G. Enjoins the Defendant from executing his duties on January 6th during the Joint Session of Congress in any manner that is insistent with the declaratory relief set forth herein, and

H. Issue any other declaratory judgments or findings or injunctions necessary to support or effectuate the foregoing declaratory judgment.

Intervenors adopt Plaintiffs' motion for a speedy summary proceeding under FRCP Rule 57 to grant the relief requested herein *as soon as practicable*, and for emergency injunctive relief under FRCP Rule 65 thereof consistent with the declaratory judgment requested herein on that same date.

Respectfully submitted,

By: /s/ Charles Bundren

**BUNDREN LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
Lead Attorney and Attorney-in Charge
State Bar No. 03343200
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
(214) 808-3555     Telephone
(972) 624-5340     Facsimile
e-mail:     charles@bundrenlaw.net
**ATTORNEY FOR INTERVENORS:**

## CERTIFICATE OF ELECTRONIC FILING

The undersigned hereby certifies that this document has been filed by electronic means through the court's CM/ECF electronic filing system on the date indicated below.

## CERTIFICATE OF SERVICE UNDER LOCAL RULE

Pursuant to LOCAL RULE CV-5 (c)&(d) of the Local Civil Rules of the United States District Court for the Eastern District of Texas, Notice of Electronic Filing of this document automatically generated by this Court's CM/ECF system constitutes service of this document under Federal Rule of Civil Procedure 5(b)(2)(E) and is sufficient service by serving the parties indicated below.

## CERTIFICATE OF SERVICE

This is to certify that on this 1st day of January 2020 a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure and the United States District Court for the Eastern District of Texas Local Rules on all legal counsel of record for any party and all pro se parties by serving the following:

William Lewis Sessions
Texas Bar No. 18041500
Sessions & Associates, PLLC
14591 North Dallas Parkway, Suite 400
Dallas, TX 75254
Tel: (214) 217-8855
Fax: (214) 723-5346 (fax)
Email: lsessions@sessionslaw.net

Howard Kleinhendler
Howard Kleinhendler Esquire
NY Bar No. 2657120
369 Lexington Ave., 12th Floor
New York, New York 10017
Tel: (917) 793-1188
Fax: (732) 901-0832
Email: howard@kleinhendler.com

Lawrence J. Joseph
DC Bar No. 464777
Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: (202) 355-9452
Fax: 202) 318-2254
Email: ljoseph@larryjoseph.com

Julia Z. Haller
DC Bar No. 466921
Brandon Johnson
DC Bar No. 491370
Defending the Republic
601 Pennsylvania Ave., NW
Suite 900
South Building
Washington, DC 20004
Tel: (561) 888-3166
Fax: 202-888-2162
Email: hallerjulia@outlook.com
Email: brandoncjohnson6@aol.com
**ATTORNEYS FOR PLAINTIFFS.**

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
JENNIFER B. DICKEY
Principal Deputy Assistant Attorney General
*/s/ John V. Coghlan*
JOHN V. COGHLAN
Deputy Assistant Attorney General
Federal Programs Branch
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue N.W.
Washington, DC 20530
Tel: (202) 353-2793
Email: john.coghlan2@usdoj.gov
**ATTORNEYS FOR DEFENDANT.**

Caitlin Halligan (NY Bar No. 3933447)
Samuel Breidbart (NY Bar No. 5783352)
Adam K. Hersh (NY Bar No. 5693064)
Max H. Siegel (NY Bar No. 5652235)
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, New York 10104

Douglas N. Letter (DC Bar No. 253492)
*General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
Megan Barbero (MA Bar No. 668854)
Josephine Morse (DC Bar No. 1531317)
William E. Havemann (VA Bar No. 86961)
Eric R. Columbus (DC Bar No. 487736)
Lisa K. Helvin (DC Bar No. 988143)

Michael R. Dreeben (DC Bar No. 370586)
GEORGETOWN UNIVERSITY LAW
CENTER
600 New Jersey Avenue NW
Washington, D.C. 20001
Jonathan B. Schwartz (DC Bar No. 342758)
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, DC 20515
Telephone: (202) 225-9700
Facsimile: (202) 226-1360
douglas.letter@mail.house.gov
**ATTORNEYS FOR AMICUS U.S. HOUSE OF REPRESENTATIVES.**

John S. Campbell, pro se
Amicus Curiae
17 Oakland Terrace
Mobile, AL 36604
(251) 605-5675
consultingattorney@yahoo.com
**AMICUS CURIAE**

Alan Kennedy
Alan Hamilton Kennedy, Esquire
Colorado Bar No. 50275
1975 North Grant Street, # 421
Denver, CO 80203
(303) 345-3397
alan.kennedy@aya.yale.edu
**PROPOSED INTERVENOR-DEFENDANT.**

*Timothy P. Dowling*
Pro se
Texas State Bar No. 06083900
8017 Villefranche Dr.
Corpus Christi, TX 78414
(361) 960-3135
Relampago@aol.com
**PRO SE**

__x__by the Court's CM/ECF Pacer electronic filing System pursuant to FRCP 5(b)(2)(E) and 5(b)(3), and LOCAL RULE CV-5 (c)&(d),

____ by certified mail return receipt requested deposited with the United States Postal Service on the date indicated above pursuant to FRCP 5(b)(2)(C),

____ by email at the email address indicated above pursuant to FRCP 5(b)(2)(E), and/or

____ by hand delivery service on the date indicated above pursuant to FRCP 5(b(2)(A) and
(B).

By: /s/ Charles Bundren
**BUNDREN LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
**ATTORNEY FOR INTERVENORS:**

## CERTIFICATE OF CONFERENCE

Intervenors' Counsel has complied with the meet and confer requirements in LOCAL RULE CV-7(h). Intervenors counsel, Mr. Bundren, conferred by personal telephone call with Lewis Sessions, Esq. December 31, 2020, counsel for Plaintiffs and Plaintiffs do not oppose Intervenors motion.

For Defendant, the personal conference required by LOCAL RULE CV-7(h) was conducted on December 31, 2020 with John Coughlan, Esq., Counsel for Defendant. Mr. Coughlan stated that Defendant takes no position with respect to Intervenors' motion

By: /s/ Charles Bundren
**BUNDREN LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
**ATTORNEY FOR INTERVENORS:**