IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| THE HONORABLE LOUIE GOHMERT, et al., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 6:20-cv-660-JDK |
| THE HONORABLE MICHAEL R. PENCE, in his official capacity as Vice President of the United States, | § § § § § | |
| Defendant. | § | |

**ORDER OF DISMISSAL**

This case challenges the constitutionality of the Electoral Count Act of 1887, as codified at 3 U.S.C. §§ 5, 15. The Court cannot address that question, however, without ensuring that it has jurisdiction. *See, e.g.*, U.S. CONST. art. III, § 2; *Cary v. Curtis*, 44 U.S. 236, 245 (1845). One crucial component of jurisdiction is that the plaintiffs have standing. This requires the plaintiffs to show a personal injury that is fairly traceable to the defendant's allegedly unlawful conduct and is likely to be redressed by the requested relief. *See, e.g.*, U.S. CONST. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Requiring plaintiffs to make this showing helps enforce the limited role of federal courts in our constitutional system.

The problem for Plaintiffs here is that they lack standing. Plaintiff Louie Gohmert, the United States Representative for Texas's First Congressional District, alleges at most an institutional injury to the House of Representatives. Under well-settled Supreme Court authority, that is insufficient to support standing. *Raines v.*

*Byrd*, 521 U.S. 811, 829 (1997).

The other Plaintiffs, the slate of Republican Presidential Electors for the State of Arizona (the "Nominee-Electors"), allege an injury that is not fairly traceable to the Defendant, the Vice President of the United States, and is unlikely to be redressed by the requested relief.

Accordingly, as explained below, the Court lacks subject matter jurisdiction over this case and must dismiss the action.

### I.

### A.

The Electors Clause of the U.S. Constitution requires that each state appoint, in the manner directed by the state's legislature, the number of presidential electors to which it is constitutionally entitled. U.S. CONST. art. II, § 1, cl. 2. Under the Twelfth Amendment, each state's electors meet in their respective states and vote for the President and Vice President. U.S. CONST. amend XII. The electors then certify the list of their votes and transmit the sealed lists to the President of the United States Senate—that is, the Vice President of the United States. The Twelfth Amendment then provides that, "[t]he President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted." *Id*. A candidate winning a majority of the electoral votes wins the Presidency. However, if no candidate obtains a majority of the electoral votes, the House of Representatives is to choose the President—with each state delegation having one vote. *Id*.

The Electoral Count Act, informed by the Hayes-Tilden dispute of 1876, sought to standardize the counting of electoral votes in Congress. Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 FLA. L. REV. 541, 547–50 (2004). Section 5 makes states' determinations as to their electors, under certain circumstances, "conclusive" and provides that these determinations govern the counting of electoral votes. 3 U.S.C. § 5. Section 15 requires a joint session of Congress to count the electoral votes on January 6, with the President of the Senate presiding. *Id.* § 15.

During that session, the President of the Senate calls for objections on the electoral votes. Written objections submitted by at least one Senator and at least one Member of the House of Representatives trigger a detailed dispute-resolution procedure. *Id.* Most relevant here, Section 15 requires both the House of Representatives and the Senate—by votes of their full membership rather than by state delegations—to decide any objection. The Electoral Count Act also gives the state governor a role in certifying the state's electors, which Section 15 considers in resolving objections. *Id.* § 6.

It is these dispute-resolution procedures that Plaintiffs challenge in this case.

**B.**

On December 14, 2020, electors convened in each state to cast their electoral votes. *Id.* § 7; Docket No. 1 ¶ 5. In Arizona, the Democratic Party's slate of eleven electors voted for Joseph R. Biden and Kamala D. Harris. These votes were certified by Arizona Governor Doug Ducey and Arizona Secretary of State Katie Hobbs and submitted as required under the Electoral Count Act. Docket No. 1 ¶ 22. That same

3

day, the Nominee-Electors state that they also convened in Arizona and voted for Donald J. Trump and Michael R. Pence. *Id.* ¶ 20. Similar actions took place in Georgia, Pennsylvania, Wisconsin, and Michigan (with Arizona, the "Contested States"). *Id.* ¶ 20–21. Combined, the Contested States represent seventy-three electoral votes. *See id.* ¶ 23.

On December 27, Plaintiffs filed this lawsuit, alleging that there are now "competing slates" of electors from the Contested States and asking the Court to declare that the Electoral Count Act is unconstitutional and that the Vice President has the "exclusive authority and sole discretion" to determine which electoral votes should count. *Id.* ¶ 73. They also ask for a declaration that "the Twelfth Amendment contains the exclusive dispute resolution mechanisms" for determining an objection raised by a Member of Congress to any slate of electors and an injunction barring the Vice President from following the Electoral Count Act. *Id.* On December 28, Plaintiffs filed an Emergency Motion for Expedited Declaratory Judgment and Emergency Injunctive Relief ("Emergency Motion"). Docket No. 2. Plaintiffs request "an expedited summary proceeding" under Federal Rule of Civil Procedure 57. *Id.*

On December 31, the Vice President opposed Plaintiffs' motion. Docket No. 18.

## II.

As mentioned above, before the Court can address the merits of Plaintiff's Emergency Motion, it must ensure that it has subject matter jurisdiction. *See, e.g.*, *Cary*, 44 U.S. at 245 ("The courts of the United States are all limited in their nature and constitution, and have not the powers inherent in courts existing by prescription or by the common law."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340–41 (2006)

4

("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."). Article III of the U.S. Constitution limits federal courts to deciding only "cases" or "controversies," which ensures that the judiciary "respects 'the proper—and properly limited—role of the courts in a democratic society.'" *DaimlerChrysler*, 547 U.S. at 341 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)); *see also Raines*, 521 U.S. at 828 (quoting *United States v. Richardson*, 418 U.S. 166, 192 (1974)) ("Our regime contemplates a more restricted role for Article III courts . . . 'not some amorphous general supervision of the operations of government.'").

"[A]n essential and unchanging part of the case-or-controversy requirement of Article III" is that the plaintiff has standing. *Lujan*, 504 U.S. at 560. The standing requirement is not subject to waiver and requires strict compliance. *E.g.*, *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996); *Raines*, 521 U.S. at 819. A standing inquiry is "especially rigorous" where the merits of the dispute would require the Court to determine whether an action taken by one of the other two branches of the Federal Government is unconstitutional. *Raines*, 521 U.S. at 819–20 (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986), and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & St., Inc.*, 454 U.S. 464, 473–74 (1982)). This is because "the law of Art. III standing is built on a single basic idea—the idea of separation of powers." *Allen*, 468 U.S. at 752, *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). Article III standing "enforces the Constitution's case-or-controversy requirement."

5

*DaimlerChrysler Corp.*, 547 U.S. at 342 (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). And "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines,* 521 U.S. at 818.

Article III standing requires a plaintiff to show: (1) that he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that "the injury is fairly traceable to the challenged action of the defendant"; and (3) that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *El Paso Cnty. v. Trump*, 982 F.3d 332, 336 (5th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "The party invoking federal jurisdiction bears the burden of establishing these elements," and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.*

### III.

Here, Plaintiffs have failed to demonstrate that they have standing to bring the claim alleged in Count I of their complaint.

### A.

The first Plaintiff is the Representative for Texas's First Congressional District, the Honorable Louie Gohmert. Congressman Gohmert argues that he will

6

be injured because "he will not be able to vote as a Congressional Representative in accordance with the Twelfth Amendment." Docket No. 2 at 4. Specifically, Congressman Gohmert argues that on January 6, 2021, when Congress convenes to count the electoral votes for President and Vice President, he "will object to the counting of the Arizona slate of electors voting for Biden and to the Biden slates from the remaining Contested States." Docket No. 1 ¶ 6. If a member of the Senate likewise objects, then under Section 15 of the Electoral Count Act, each member of the House and Senate is entitled to vote to resolve the objections, which Congressman Gohmert argues is inconsistent with the state-by-state voting required under the Twelfth Amendment. Docket No. 2 at 5. Congressmen Gohmert argues that the Vice President's compliance with the procedures of the Electoral Count Act will directly cause his alleged injury. *Id.* at 7. And he argues that a declaration that Sections 5 and 15 of the Electoral Count Act are unconstitutional would redress his alleged injury. *Id.* at 9–10.

Congressman Gohmert's argument is foreclosed by *Raines v. Byrd*, which squarely held that Members of Congress lack standing to bring a claim for an injury suffered "solely because they are Members of Congress." 521 U.S. at 821. And that is all Congressman Gohmert is alleging here. He does not identify any injury to himself as an individual, but rather a "wholly abstract and widely dispersed" institutional injury to the House of Representatives. *Id*. at 829. Congressman Gohmert does not allege that he was "singled out for specially unfavorable treatment as opposed to other Members of their respective bodies," does not claim that he has

7

"been deprived of something to which [he] *personally* [is] entitled," and does not allege a "loss of any private right, which would make the injury more concrete." *Id*. at 821 (emphasis in original). Congressman Gohmert's alleged injury is "a type of institutional injury (the diminution of legislative power), which necessarily damages all Members of Congress." *Id*. Under these circumstances, the Supreme Court held in *Raines*, a Member of Congress does not have "a sufficient 'personal stake'" in the dispute and lacks "a sufficiently concrete injury to have established Article III standing." *Id*. at 830.

For the first time in their reply brief, Plaintiffs assert that Congressman Gohmert has standing as a Texas voter, relying on *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 430 (5th Cir. 2011). Docket No. 30 at 30, 33–34. The Court disagrees. In *LULAC*, the Fifth Circuit held that an individual voter had standing to challenge amendments to the City of Boerne's city council election scheme that would allegedly deprive him of a "pre-existing right to vote for certain offices." 659 F.3d at 430. That is not the case here. Congressman Gohmert does not allege that he was denied the right to vote in the 2020 presidential election. Rather, he asserts that under the Electoral Count Act, "he will not be able to vote *as a Congressional Representative* in accordance with the Twelfth Amendment." Docket No. 2 at 4 (emphasis added). Because Congressman Gohmert is asserting an injury in his role as a Member of Congress rather than as an individual voter, *Raines* controls.

8

Further weighing against Congressman Gohmert's standing here is the speculative nature of the alleged injury. "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149 (2010)); *see also Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (alleged injury cannot be "conjectural" or "hypothetical"). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 565 n.2).

Here, Congressman Gohmert's alleged injury requires a series of hypothetical—but by no means certain—events. Plaintiffs presuppose what the Vice President will do on January 6, which electoral votes the Vice President will count or reject from contested states, whether a Representative and a Senator will object under Section 15 of the Electoral Count Act, how each member of the House and Senate will vote on any such objections, and how each state delegation in the House would potentially vote under the Twelfth Amendment absent a majority electoral vote. All that makes Congressman Gohmert's alleged injury far too uncertain to support standing under Article III. *Id.* at 414 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

9

Accordingly, the Court finds that Congressman Gohmert lacks standing to bring the claim alleged here.

## B.

The Nominee-Electors argue that they have standing under the Electors Clause "as candidates for the office of Presidential Elector because, under Arizona law, a vote cast for the Republican Party's President and Vice President is cast for the Republican Presidential Electors." Docket No. 2 at 6 (citing ARIZ. REV. STAT. § 16-212). The Nominee-Electors were injured, Plaintiffs contend, when Governor Ducey unlawfully certified and transmitted the "competing slate of Biden electors" to be counted in the Electoral College. *Id.* at 7.

This alleged injury, however, is not fairly traceable to any act of the Vice President. Nor is it an injury likely to be redressed by a favorable decision here. *See Friends of the Earth*, 528 U.S. at 180–81.[1] Plaintiffs do not allege that the Vice President had any involvement in the "certification and transmission of a competing

---

[1] The Court need not decide whether the Nominee-Electors were "candidates" under Arizona law. Plaintiffs cite *Carson v. Simon*, in which the Eighth Circuit held that prospective presidential electors are "candidates" under Minnesota law and have standing to challenge how votes are tallied in Minnesota. 978 F.3d 1051, 1057 (8th Cir. 2020). But the U.S. District Court for the District of Arizona has distinguished *Carson*, holding that presidential electors in Arizona are ministerial and are "not candidates for office as the term is generally understood" under Arizona law. *Bowyer v. Ducey*, — F. Supp. 3d —, 2020 WL 7238261, at *4 (D. Ariz. Dec. 9, 2020); *see also Feehan v. Wis. Elections Comm'n*, No. 20-CV-1771-PP, 2020 WL 7250219, at *12 (E.D. Wis. Dec. 9, 2020) (nominee-elector is not a candidate under Wisconsin law). "Arizona law makes clear that the duty of an Elector is to fulfill a ministerial function, which is extremely limited in scope and duration, and that they have no discretion to deviate at all from the duties imposed by the statute." *Bowyer*, 2020 WL 7238261, at *4 (citing ARIZ. REV. STAT. § 16-212(c)). Arizona voters, moreover, vote "for their preferred presidential candidate," not any single elector listed next to the presidential candidates' names. *Id.* (citing ARIZ. REV. STAT. § 16-507(b)). The court in *Bowyer* therefore held that nominee-electors in Arizona lacked standing to sue state officials for alleged voting irregularities. *See id.* In any event, even if the Nominee-Electors had standing to sue state officials to redress the injury alleged here, they have not done so. Plaintiffs have named only the Vice President, and they have not shown "a fairly traceable connection between [their] injury and the complained-of conduct of defendant." *E.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

slate of Biden electors." Docket No. 2 at 7. Nor could they. *See* 3 U.S.C. § 6. That act is performed solely by the Arizona Governor, who is a "third party not before the court." *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). Indeed, Plaintiffs acknowledge that their injury was caused by Arizona officials in Arizona, the "Vice President did not cause [their] injury," and their "unlawful injuries [were] suffered in Arizona." Docket No. 2 at 7.

The Nominee-Electors argue that their injury is nevertheless fairly traceable to the Vice President because he will "ratify and purport to make lawful the unlawful injuries that Plaintiffs suffered in Arizona." *Id.* For support, Plaintiffs cite *Sierra Club v. Glickman*, in which the Fifth Circuit held that an environmental injury was fairly traceable to the Department of Agriculture, even though the injury was directly caused by third-party farmers, because the Department had "the ability through various programs to affect the pumping decisions of those third party farmers to such an extent that the plaintiff's injury could be relieved." 156 F.3d 606, 614 (5th Cir. 1998). Nothing like that is alleged here. The Vice President's anticipated actions on January 6 will not affect the decision of Governor Ducey regarding the certification of presidential electors—which occurred more than two weeks ago on December 14. Even "ratifying" or "making lawful" the Governor's decision, as Plaintiffs argue will occur here, will not have any "coercive effect" on Arizona's certification of electoral votes. *See Bennett v. Spear*, 520 U.S. 154, 168–69 (1997).

For similar reasons, the Nominee-Electors' claimed injury is not likely to be redressed here. To satisfy redressability, Plaintiffs must show that it is "likely" their

11

alleged injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561. But here, Plaintiffs seek declaratory and injunctive relief as to the manner of the Vice President's electoral vote *count*. See Docket No. 1 ¶ 73. Such relief will not resolve their alleged harm with respect to Governor Ducey's electoral vote *certification*. See Docket No. 2 at 7. As the Supreme Court has long held, "a federal court can act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon*, 426 U.S. at 41–42; *see also El Paso Cnty.*, 982 F.3d at 343 (plaintiff lacks standing where an order granting the requested relief "would not rescind," and "accordingly would not redress," the allegedly harmful act).

Even if their injury were the loss of the right to vote in the Electoral College, *see* Docket No. 2 at 6, Plaintiffs' requested relief would not redress that injury. Plaintiffs are not asking the Court to order the Vice President to count the Nominee-Electors' votes, but rather that the Vice President "exercise the exclusive authority and sole discretion in determining which electoral votes to count for a given State," or alternatively, to decide that no Arizona electoral votes should count. See Docket No. 1 ¶ 73. It is well established that a plaintiff lacks standing where it is "uncertain that granting [the plaintiff] the relief it wants would remedy its injuries." *Inclusive Comtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 657–58 (5th Cir. 2019).

Accordingly, the Court finds that the Nominee-Electors lack standing.[2]

---

[2] Plaintiffs Hoffman and Kern claim without supporting argument that they have standing as members of the Arizona legislature. Docket No. 2 at 4. This claim fails for the reasons Congressman Gohmert's standing argument fails. *See supra* Part III.A.

12

## IV.

Because neither Congressman Gohmert nor the Nominee-Electors have standing here, the Court is without subject matter jurisdiction to address Plaintiffs' Emergency Motion or the merits of their claim. *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). The Court therefore **DISMISSES** the case without prejudice.

So **ORDERED** and **SIGNED** this **1st** day of **January, 2021.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE